·(No. 41840.—

EDWARD BRUSKE, Appellant, *vs.* JUDITH A. ARNOLD, Appellee.

*Opinion filed Nov. 26, 1969.—Rehearing denied Jan. 26, 1970.*

CULBERTSON, J., took no part.

HORWITZ, ANESI & OZMAN, of Chicago, (MAX P. OZ-MAN, of counsel,) for appellant.

KEVIN KELLY, of LaSalle, (PETER FERRACUTE, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On January 3, 1965, while walking across a busy street in the city of Peoria, plaintiff, Edward Bruske, sustained serious injuries when he was struck by an automobile driven by defendant, Judith A. Arnold. His suit to recover for these injuries, instituted in the circuit court of LaSalle County, resulted in a verdict and judgment for defendant, and plaintiff appealed. The Appellate Court, Third District, affirmed (100 Ill. App. 2d 428), and we granted leave to appeal.

The principal issue raised involves the trial court's refusal to allow the plaintiff to impeach the defendant on the basis of an allegedly inconsistent statement made prior to trial to an investigator used by the plaintiff. Although it is debatable whether the statement serves to impeach the defendant's trial testimony, we elect, as did the Appellate Court, to rule on the propriety of its suppression because of the importance of this issue to future litigation.

The factual background against which this impeachment issue is framed is fully set out in the Appellate Court opinion. All that need be noted for coherent discussion is that the statement was given to a private investigator hired prior to the filing of the lawsuit by plaintiff's counsel (who was other than counsel here) but subsequent to the filing of the lawsuit and the appearance of defendant's counsel. The statement was taken at defendant's home, without notice to her counsel despite plaintiff's counsel's knowledge that she was so represented. The statement consisted of a series of questions, usually leading, and answers, and was transcribed by a court reporter. Pursuant to defendant's motion at trial, the trial judge suppressed the statement for all purposes, including impeachment, indicating he considered it to have been illegally and unethically procured.

To overturn this ruling, plaintiff advances two alternative arguments. He contends that the statement was not obtained illegally as no attempt was made to mislead the de-

fendant, or even if obtained illegally it is nonetheless admissible.

In our courts, once a lawsuit has been filed, and all parties have appeared, the pretrial search for matters relevant to the pending litigation is controlled by discovery rules promulgated by this court. (Rules 201-219, 36 Ill.2d 54-82, Ill. Rev. Stat. 1967, ch. 110A, pars. 201-219). These rules, which have the force of law (*Harris* v. *Annunzio*, 411 Ill. 124), provide, *inter alia,* that discovery may not be initiated "prior to the time all defendants have appeared or are required to appear" (Rule 201(d)) and that proper notice be furnished in writing upon the other parties when depositions are sought to be taken. (Rule 206(a).) To implement the enforcement of such directions, Rule 201(c) empowers the court to "make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." In addition to our rules, Canon 9 of the Canons of Ethics adopted by the Illinois State Bar Association, provides in pertinent part: "A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; * * *." From a mere recitation of the pertinent provisions of our rules and Canon 9 of the Canons of Ethics, we think it manifest that the statement complained of must be considered to have been illegally obtained. No serious argument against such conclusion may stand, as it makes slight difference that the statement of a party was taken by an agent of plaintiff's counsel rather than counsel himself. The real question, therefore, becomes whether, notwithstanding this illegality, the statement should have been admitted.

Support for its admission may be found both in case law and respected treatises on evidence. (See 8 Wigmore on Evidence, 1961 Ed., sec. 2183; Jones, Laws of Evidence, 5th Ed., Vol. 14 (1958) par. 868; *Thanhouser* v. *Milprint,*

*Inc.*, 192 N.Y.S. 2d 911; *Walker* v. *Penner*, 190 Ore. 542, 227 P.2d 316.) The rationale for admissibility rests upon the idea prevalent at common law, that the importance of ascertaining the truth overrides the manner in which evidence is obtained, and that collateral inquiries made at trial into the manner of obtaining it merely delay and frustrate the primary litigation. It is our opinion, however, that such common-law notions, no matter how well documented or oft-repeated, must yield in this situation to the controlling language of our rules of discovery and the prohibition expressed by Canon 9.

In reaching this opinion, we are not unmindful that rules of discovery should not necessarily operate as exclusionary rules of evidence or that separate procedures exist for the regulation and discipline of unethical conduct on the part of attorneys. Rules, however, to be effective must carry an appropriate sanction; otherwise, the orderly process of a lawsuit is left to the mercy of the individual's sense of justice. We deem that the appropriate sanction in this instance was the exclusion from evidence of the statement. Accordingly, we hold that the suppression of the litigant's statement, in the situation here presented, was proper.

Plaintiff next charges that the trial court erred in giving the following special interrogatory: "Was the plaintiff, Edward Bruske, in the exercise of ordinary care for his own safety before and at the time of the occurrence?" Consistent with its general verdict, the jury returned a "No" answer to this interrogatory. Plaintiff argues, and we must agree, that the interrogatory is defective because it fails to include the additional element of whether his (plaintiff's) negligence proximately contributed to his injuries. We do not, however, regard such defect as reversible error. The jury was fully and adequately instructed on the law concerning contributory negligence, including the requirement of proximate cause. While not a complete cure for the faulty

interrogatory, when these instructions are viewed together with the evidence in the case, there is little indication that the jury was confused by the interrogatory to the detriment of the plaintiff.

It is finally contended that the closing argument of defendant's counsel was improper and prejudicial. More specifically, it is urged that defense counsel improperly: (1) argued his personal experiences as an attorney; (2) asked the jurors to place themselves in the position of the defendant immediately prior to the accident; (3) suggested that plaintiff's attorneys would use distorted evidence in support of his case, and (4) implied that plaintiff had been drinking although the trial court had previously excluded this issue from the trial. None of these instances now relied upon for reversal, however, were objected to at trial and must therefore be considered waived. (*McElroy* v. *Force,* 38 Ill.2d 528.) It is true that this rule of waiver would not apply where the argument of counsel is so inflammatory and prejudicial as to deteriorate the judicial process. (*Belfield* v. *Coop,* 8 Ill.2d 293.) And it is also true that once an objection has been made, and a ruling obtained, it is not necessary to repeat the same objection to preserve the point for review. But from our reading of the record, including the closing argument of both sides, we see no reason to relax the waiver principle in this case. The only reference made to drinking was that plaintiff had stepped off the sidewalk after emerging from the doorway of a tavern. The location of the tavern door in relation to plaintiff's route across the street was a fact in evidence. It is evident that reference to the tavern was made for the purpose of showing that plaintiff was not walking in a crosswalk when struck rather than suggesting that he had been drinking. Similarly, the request of the jurors to ask themselves what they would have done under the circumstances to avoid the accident does not appear designed to make them sympathetic to the defendant's cause. On the contrary, such request seems perfectly

consistent with the ultimate task of the jury; namely, to apply "the reasonable man" standard to the defendant's conduct.

Closely tied to the charge concerning statements made about the willingness of plaintiff's counsel to use perverted evidence are plaintiff's additional charges that the defense's closing argument grossly misstated his testimony and erroneously accused his counsel of telling witnesses "not to talk" with lawyers for the other side. Timely objections were made to these remarks and they therefore merit close inspection.

A review of the entire record convinces us that the evidence does not justify the accusation that plaintiff's counsel told witnesses not to speak with opposing counsel or the suggestion that they wanted to use or would use perverted testimony. These statements were improper but not entirely unsupported by the evidence. For example, witnesses did admit to being told they "did not have to talk" with the other side. Furthermore, plaintiff introduced photographs taken from a perspective which made the situs of the accident as testified to by witnesses appear closer to the crosswalk than its true distance. Such examples serve to explain, though not excuse, the statements in question.

With regard to the alleged misstatements of plaintiff's testimony, it must be observed that the defendant was not limited to statements made on direct examination; the defendant could present plaintiff's testimony in the light most favorable to her case. To the extent this presentation might be thought to exceed the limits of permissible advocacy, it was cured by the trial court's cautionary remarks that the jury should decide the case on the basis of the evidence it heard. In addition, plaintiff had the opportunity to rebut any misstatements in the closing argument and did so.

Viewing defendant's closing argument as a whole, it is our opinion that the improprieties alleged do not require a new trial. As the appellate court pointed out at page 436

"[T]he ultimate question on review is not whether a trial was scrupulously free from error, but whether there was error which operated to the prejudice of the appealing party or unduly affected the outcome below. (*Nelson* v. *Union Wire Rope Corp.*, 31 Ill.2d 69, 118.)" In this instance, we hold that there was not.

For the foregoing reasons, the judgment of the Appellate Court, Third District, is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CULBERTSON took no part in the consideration or decision of this case.