# Illinois Official Reports

## Appellate Court

---

**_Gelinas v. Barry Quadrangle Condominium Ass'n_, 2017 IL App (1st) 160826**

---

| | |
|---|---|
| Appellate Court Caption | MATTHEW GELINAS, Plaintiff-Appellant, v. THE BARRY QUADRANGLE CONDOMINIUM ASSOCIATION, NAEEM SIDDIQUI, JOHN TENFELDER, SYLVIA FRANKE, KURT GRUENBERG, NICK BRINKER, STU KIESOW, MIKE TENZILLO, and DAVID HAGELE, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-16-0826 |
| Rule 23 order filed<br>Rehearing denied<br>Rule 23 order<br>withdrawn<br>Opinion filed | December 29, 2016<br>January 27, 2017<br><br>February 1, 2017<br>February 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-3732; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Stanley A. Kitzinger, Kevin Q. Butler, and Nathan P. Karlsgodt, of McKnight, Kitzinger & Pravdic, LLC, of Chicago, for appellant.<br><br>Nicholas R. Mitchell, of Kovitz Shifrin Nesbit, of Chicago, for appellees. |

Panel　　　　　　　　　PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Harris and Mikva concurred in the judgment and opinion.

**OPINION**

¶ 1　　　　Plaintiff, Matthew Gelinas, appeals the circuit court's order that granted the motion to dismiss with prejudice brought by defendants, his condominium association and its board of directors. Plaintiff contends that the circuit court erred when it determined that the condominium association's bylaws and declarations and the Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2012)) allowed the condominium association to assess an insurance deductible to a single unit owner. Defendants assert that the complaint was properly dismissed because the bylaws, declarations, and the Act authorized plaintiff to be charged the amount "not covered by insurance." We agree with defendants and affirm the trial court's ruling.

¶ 2　　　　　　　　　　　　　　　BACKGROUND

¶ 3　　　　This case arises from a dispute between plaintiff, the owner of a unit located at 841 West Barry Avenue in Chicago, and defendants, plaintiff's condominium association—the Barry Quadrangle Condominium Association (Association)—and members of its board of directors (Board), as result of a fire that originated in plaintiff's unit and caused damage to the building. Due to the limited nature of the record on appeal, our recitation of the background of this case primarily stems from the allegations contained in plaintiff's second amended complaint.[1]

¶ 4　　　　On June 2, 2012, a fire that originated in plaintiff's unit damaged some of the structure and the common areas of one of the buildings of the Barry Quadrangle Condominiums. As a result, the Board made a claim of loss with the Association's insurer, which was accepted. Plaintiff's second amended complaint alleged that the Association profited and received a windfall from the insurer's payout. Specifically, in relevant part, Plaintiff's second amended complaint alleged the following:

> "28. On information and belief, the insurer estimated the actual cash value of the Association's claim to be approximately $202,000.00.
>
> 29. On information and belief, based upon that estimate, the insurer tendered the Board and the Association $192,000.00 to repair and replace the fire-damaged property.
>
> 30. On information and belief, the $192,000.00 represented the actual cash value of the Association's claim, minus the $10,000.00 deductible.
>
> 31. On information and belief, the Board and the Association accepted those funds and began to repair and replace the fire-damaged property.

---

[1] We rely on plaintiff's second amended complaint because it was the operative pleading on file that was challenged by defendants' motion to dismiss and subsequently dismissed with prejudice.

32. On information and belief, the cost of repairing and replacing the fire-damaged property ended up being only $152,000.00, resulting in a $40,000.00 profit/windfall to the Board and the Association from the insurance proceeds.

33. On information and belief, as a result of the profit/windfall, the Board and Association were never required to advance a $10,000.00 deductible.

34. Accordingly, any determination by the Board and the Association to pursue to the $10,000.00 deductible from Gelinas, would necessarily have not been an act to recoup the deductible, but rather an effort to profit off the insurer and Gelinas."

¶ 5 According to plaintiff's second amended complaint, on September 26, 2013, plaintiff received an email containing correspondence that was purportedly sent to him by the Association on September 23, 2013. The Association's correspondence allegedly informed plaintiff that he was being assessed $10,000 as reimbursement due the Association for the deductible it had paid.[2] Plaintiff requested a hearing to contest the validity of the "charge-back" for the deductible. Plaintiff's second amended complaint alleged that on October 21, 2013, plaintiff was informed via email that the Board had scheduled the hearing for October 23, 2013 at 6:30 p.m. Plaintiff further alleged that when the hearing was conducted, it was a closed meeting and he was the only Association member who had been given notice. Also, plaintiff alleged that after the hearing, the Board failed to vote on the issue of whether he should validly incur the $10,000 charge-back. On October 29, 2013, plaintiff was informed he was being assessed the $10,000 deductible.

¶ 6 Plaintiff submitted a check dated February 11, 2014, for $10,000. He subsequently filed his original complaint in circuit court on March 4, 2014. The parties conducted some discovery and engaged in motion practice, with defendants filing two motions to dismiss prior to the motion to dismiss that is at issue here. The court granted in part and denied in part defendants' first motion to dismiss on October 6, 2014. Subsequently, plaintiff sought and was granted leave to file his first amended complaint. Defendants filed a motion to dismiss the first amended complaint and the court again granted it in part and denied it in part. In doing so, the court also granted plaintiff leave to file his second amended complaint, which he did on July 23, 2015. Plaintiff's second amended complaint contained the following five counts: (I) constructive trust against the Association and the Board; (II) breach of contract against the Association and the Board; (III) breach of fiduciary duty against the Association and the Board; (IV) punitive damages against the Association and the Board; and (V) action to compel examination of records against the Association and the Board. Count V[3] was brought pursuant to sections 19(a)(1-5) and (b) of the Act, which require an association's board of managers to keep and maintain certain records and also grant all members of an association the right to inspect, examine, and make copies of said records at any reasonable time. 765 ILCS 605/19(a)(1-5), (b) (West 2012). Plaintiff alleged that he made a written request to the Board to inspect documents required to be maintained by the Association under the Act but that, despite his request, the documents were not made available to him within 30 days and his request was "deemed denied."

---

[2]The record does not contain a copy of the September 23, 2013, letter or the September 26, 2013, email.

[3]Count V included a notation that "[t]his Count was previously dismissed on July 14, 2015 and is repleaded solely for purposes of preserving the issue for appeal."

¶ 7 On August 17, 2015, defendants filed their motion to dismiss plaintiff's second amended complaint, arguing that plaintiff's complaint should be dismissed pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9)(West 2012)) because his claim was barred by other affirmative matter that negated his cause of action. Specifically, defendants argued that section 12(c) of the Act permitted the Association to be reimbursed for the deductible. Defendants also contended that plaintiff's allegation that the Association had received a surplus of insurance proceeds was incorrect and that the Association, in fact, had incurred $371,815.34 in restoration expenses, of which only $369,279.55 had been paid by the insurer. Further, defendants argued that plaintiff cannot challenge the notice he received for his hearing before the Board because he attended the hearing, thus his objections regarding notice are irrelevant. Additionally, they argued that notice to all association members was not required for a violation hearing. Finally, defendants asserted that the $10,000 charge-back was approved during an open board meeting, and they attached the affidavit of Sylvia Franke, who had been a member of the Board since 2013, to support their position. In Franke's affidavit, she attested that the Board approved the charge-back on December 11, 2013, but that the original meeting minutes for that board meeting "mistakenly omitted said approval." Her affidavit further stated that the December 11, 2013, meeting minutes were revised during the July 7, 2015, board meeting.

¶ 8 Plaintiff filed his response to the motion to dismiss on November 25, 2015. Plaintiff argued that Franke's affidavit should be stricken and not considered in ruling on the motion because much of the information contained therein was based on Franke's conversations with others and not on her personal knowledge. Plaintiff cited to portions of Franke's discovery deposition, wherein she testified that she did not have any personal knowledge of board meeting activity during 2011 and 2012, when she was not a member of the Board. Plaintiff also argued that Franke's deposition testimony showed she had no personal knowledge of the origin of the fire and that she admitted that the Board amended the meeting minutes as a result of this litigation. As to the substance of defendants' motion, plaintiff contended that section 12(c) of the Act was permissive in nature, as opposed to mandatory; thus, it did not conflict with the Association's governing documents. Plaintiff also argued that defendants' remaining arguments were not affirmative matters, and if they were, then they were contradicted by the holding in *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290, which dealt with the notice required before condominium board meetings.

¶ 9 Defendants' reply was filed on December 16, 2015. Defendants argued that Franke's affidavit was proper because her personal knowledge was irrelevant where her attestations were regarding what determinations the Board made, which is what is relevant for this case. Additionally, defendants attempted to refute plaintiff's argument regarding the fact that Franke was not on the Board during the years 2011-12 by pointing out that neither the complaint nor the motion to dismiss was based on a board meeting that took place during that time period. Defendants further argued that plaintiff's interpretation of article VIII of the declaration contradicted the Act, which would require the declaration deemed void. Additionally, defendants asserted that they believed that article VIII was consistent with the Act. Finally, defendants argued that they had established that the Association had not received a surplus, which plaintiff could not dispute.

¶ 10 The court ruled on defendants' motion to dismiss plaintiff's second amended complaint without a hearing on February 24, 2016. The court's order read:

"The motion to dismiss is [granted]. The court finds that the Association properly charged back the deductible to [p]laintiff in accordance with Section 12 of the Illinois Condominium Property Act. The court denies [p]laintiff's request to strike portions of Sylvia Franke's affidavit in support of the motion, as the court finds that Ms. Franke had personal knowledge of the statements contained in the affidavit. This matter is [dismissed with prejudice]."

¶ 11   Plaintiff filed his timely notice of appeal on March 24, 2016.

¶ 12                                      ANALYSIS

¶ 13   The trial court dismissed this suit pursuant to section 2-619 of the Code, on the ground that affirmative matter defeated plaintiff's cause of action, specifically finding that the Association properly charged back the deductible to plaintiff. 735 ILCS 5/2-619(a)(9) (West 2012).

¶ 14   A motion for involuntary dismissal pursuant to section 2-619 should be granted only where there are no material facts in dispute and the movant is entitled to dismissal as a matter of law. *King v. City of Chicago*, 324 Ill. App. 3d 856, 858-59 (2001). A section 2-619 motion admits all well-pleaded facts and the legal sufficiency of the complaint as true. *Id.* at 859. Specifically, section 2-619(a)(9) of the Code permits the dismissal of a claim when " 'the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim.' " *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 89 (2004) (quoting 735 ILCS 5/2-619(a)(9) (West 2012)). Our review of a dismissal pursuant to section 2-619 of the Code is *de novo*. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 368 (2003). "A reviewing court is not bound to accept the reasons given by the trial court for its judgment and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct." *King*, 324 Ill. App. 3d at 859.

¶ 15   On appeal, plaintiff argues that the trial court erred when it determined that the declarations, the bylaws, and the Act authorized the Association to assess an insurance deductible charge-back to a single unit owner. Additionally, plaintiff contends that the trial court improperly allowed defendants to contradict the factual allegations of his complaint through the use of Franke's affidavit. Finally, plaintiff asserts that the trial court erred when it dismissed count V of the first and second amended complaints with prejudice. Defendants respond that the Association's bylaws and the Act authorize the Association to charge plaintiff for the insurance deductible, Franke's affidavit is not a basis for reversal, and the trial court properly dismissed count V of plaintiff's complaint. We agree with defendants and affirm the trial court's decision. We address each of plaintiff's appellate arguments in turn.

¶ 16                          Application of Bylaws and Act

¶ 17   "When a controversy regarding the rights of a condominium unit owner in a condominium arises, we must examine any relevant provisions in the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2006)), and the declaration or bylaws of the condominium and construe them as a whole." *Goldberg v. Astor Plaza Condominium Ass'n*, 2012 IL App (1st) 110620, ¶ 47. Further, the Act makes clear that "[a]ny provisions of a condominium instrument that contains provisions inconsistent with the provisions of this Act are void as

against public policy and ineffective." 765 ILCS 605/2.1 (West 2012). In this case, the provisions at issue are set forth below.

¶ 18    Article VIII of the Association's bylaws, in relevant part, reads:

"If, due to the act or neglect of an Unit Owner, or of a member of his family or household pet or of a guest or other authorized occupant or visitor of such Unit Owner, damage shall be caused to the Common Elements or to a Unit or Units owned by others, or maintenance, repairs or replacements shall be required which would otherwise be at the common expense, then such Unit Owner shall pay for such damage and such maintenance, repairs and replacements, as may be determined by the Board, to the extent not covered by insurance."

¶ 19    Section 12(c) of the Act, titled "Deductibles," states:

"The board of directors of the association may, in the case of a claim for damage to a unit or the common elements, (i) pay the deductible amount as a common expense, (ii) after notice and an opportunity for a hearing, assess the deductible amount against the owners who caused the damage or from whose units the damage or cause of loss originated, or (iii) require the unit owners of the units affected to pay the deductible amount." 765 ILCS 605/12(c) (West 2012).

¶ 20    Plaintiff contends that the court erred when it determined that the Association was able to charge plaintiff a $10,000 deductible under section 12(c) of the Act. Specifically, plaintiff argues that section 12(c) of the Act is permissive in nature; thus, in order for it to be binding on the Association, the Association must have explicitly adopted section 12(c)'s language, which it never did. Plaintiff explains that rather than adopt the charge-back options listed in section 12(c), the Association chose to adopt a different charge-back method as evidenced by the language of article VIII of the bylaws. Plaintiff asserts that the plain meaning of article VIII's phrase "to the extent not covered by insurance" is "to the extent the risk (or peril) is not 'within the scope of the insurance policy.' " Plaintiff further argues that defendant has confused the term "covered" with the term "indemnified," because the fact that the Association was not indemnified for the full amount of the loss does not mean the risk was not covered. Notwithstanding the foregoing, plaintiff argues that the Act and the bylaws do not conflict.

¶ 21    In response, defendants contend that plaintiff is essentially asking this court to narrowly construe the word "covered" within the insurance industry vernacular. Defendants argue that they spent at least $10,000 in the form of an insurance deductible for the fire restoration project, and as such, they are allowed to charge-back this amount to plaintiff per the language of article VIII of the bylaws. In other words, defendants assert that the Association's insurer "covered" all expenses incurred in connection with the fire other than the $10,000 deductible; therefore, the $10,000 deductible was not covered by insurance and chargeable to plaintiff under article VIII.

¶ 22    We agree with defendants. We find that plaintiff's argument asks this court to read a meaning into the language of both the Act and the bylaws that runs contrary to common sense. "The role of courts in interpreting statutes is to give effect to the legislature's intent when enacting a statute. When the statute is plain and unambiguous, we look only to what is actually contained within the statute by determining its plain and ordinary meaning." *Goldberg*, 2012 IL App (1st) 110620, ¶ 43. Looking at the plain and unambiguous language of both section 12(c) of the Act and Article VIII, we do not find that these provisions

conflict, and we find the Association complied with both of these provisions in assessing the $10,000 deductible against defendant.

¶ 23    According to section 12(c)(ii) of the Act, after notice and an opportunity for a hearing, an Association may assess the deductible amount against the owners who caused the damage or from whose units the damage or cause of loss originated. 765 ILCS 605/12(c)(ii) (West 2012). In this case, the Board provided plaintiff notice and opportunity for a hearing, which is evidenced through the undisputed fact that the hearing occurred and that plaintiff was present at it. Additionally, it is undisputed that the fire that caused the damage originated in plaintiff's unit. Thus, the Association satisfied the requirements of the Act in assessing the deductible against plaintiff. Plaintiff argues that because of the use of the term "may," section 12(c) is permissive and thus must be explicitly adopted by an association in order to apply. Defendants respond that, although section 12(c) used the term "may," it is not in the context that plaintiff argues. Instead, defendants assert that the term "may" merely refers to the fact that an association has the option to choose one of the three means through which a deductible may be handled by an association. We find defendants' argument reflects the plain meaning of the statute. In fact, plaintiff has not presented any case law that supports his proposed interpretation, and our search has not returned any. Simply put, the statute at issue is plain and unambiguous. On its face, it states that when an association incurs the payment of an insurance deductible, it may do one of three things. See *id.* Here, the Association chose to assess the deductible against plaintiff, the owner of the unit from which the damage stemmed, after providing notice and an opportunity to be heard. This conduct by the Association is in total compliance with the Act. Thus, we disagree with plaintiff's contention that the Board was required to expressly adopt the Act in order to use its provisions to charge plaintiff for the deductible.

¶ 24    Similarly, we find the Association also acted in accordance with the provisions of article VIII of the bylaws. Article VIII allows the Association to require a unit owner to pay for any damage caused by his[4] act or neglect "to the extent not covered by insurance." Here, the fire that caused the damage indisputably originated in plaintiff's unit. The Association's insurance policy covered the damage with the exception of the $10,000 insurance deductible. It is clear to this court that the language of article VIII referred to any amount of money paid by the Association that was not covered or, in other words, *paid for* by insurance. Plaintiff has failed to present any evidence or supporting law to convince this court that the term "covered" requires a strict, insurance vernacular-based interpretation. There is nothing in the bylaws that evidences an intent to use that word in a non-common sense-based manner. We believe that, on its face, the use of the term "covered" signifies the more familiar, less technical definition, similar to *paid*. In other words, article VIII's phrase "to the extent not covered by insurance" could more clearly be stated as *to the extent not paid by insurance*.

¶ 25    The $10,000 at issue in this case was paid by the Association as a deductible. Plaintiff presents many definitions to this court in support of his arguments. However, he fails to present the definition of deductible. Black's Law Dictionary defines deductible as "[u]nder an insurance policy, the portion of the loss to be borne by the insured before the insurer

---

[4]To be clear, article VIII reflects that a unit owner may be held responsible for his own act or neglect or that of "his family or household pet or of a guest or other authorized occupant or visitor of such Unit Owner."

becomes liable for payment." Black's Law Dictionary 422 (7th ed. 1999). This definition is particularly significant here because, by definition, an insurer would never cover or pay for the amount of a deductible, because the insurer does not have a duty to pay the insured until the insured pays the deductible. Thus, by definition, the amount of the deductible is always borne by the insured, which in this case is the Association. Looking at this definition, coupled with the language of article VIII, it is clear that the Association intended a unit owner who, by act or neglect, causes damage to be financially responsible for the payment of the deductible, which is, by definition, never "covered" by insurance. Although plaintiff insists that a more convoluted explanation is required, we disagree. To this court, the meaning of the language in article VIII is clear. The Association, through unambiguous language, evidenced its intent to place the burden of payment on the unit owner for any amount not covered, or paid for, by insurance, whether that amount be in the form of a deductible, an amount in excess of the policy limits, or an amount for damages resulting from an occurrence for which the insurer denied coverage. As a result, it is apparent to this court, as it was to the trial court, that plaintiff's claim against defendants is defeated as a matter of law by the Act and the Association's bylaws and was properly dismissed with prejudice.

¶ 26                                   Franke Affidavit

¶ 27    A section 2-619 movant may provide an affidavit in support of the motion if the grounds for the dismissal do not appear on the motion's face. 735 ILCS 5/2-619 (West 2012). However, a section 2-619 affidavit may not set forth facts that challenge the allegations of the complaint. *King*, 324 Ill. App. 3d at 859.

¶ 28    Plaintiff argues that by refusing to strike Franke's affidavit, the trial court improperly allowed defendants to contradict the factual allegations of the complaint. Defendants respond that Franke's affidavit was proper because plaintiff alleged various unsupported conclusions of fact in his complaint, namely assertions made "upon information and belief" that the Association received more money from the insurance company than that which it spent on the repairs. The trial court's February 24, 2016, order states, "The court denies [p]laintiff's request to strike portions of Sylvia Franke's affidavit in support of the motion, as the court finds that Ms. Franke had personal knowledge of the statements contained in the affidavit."

¶ 29    Here, we agree with defendants that the record does not contain a transcript, an order, or any other evidence that shows the trial court relied on Franke's affidavit in reaching its decision. Rather, the court's February 24, 2016, order merely evidences the trial court's decision to refuse to strike the affidavit due to its basis in Franke's personal knowledge. Even if the trial court had relied on the affidavit, we reiterate that we may sustain the judgment of the trial court upon any ground warranted, irrespective of whether the trial court's reasoning was correct. See *id.* As explained above, without reliance on Franke's affidavit, we have determined that the plain language of both the Act and the bylaws supports the dismissal of plaintiff's complaint. Therefore, the trial court did not err in refusing to strike Franke's affidavit.

¶ 30                            Count V of Plaintiff's Complaint

¶ 31    Plaintiff's final argument is that the trial court erred when it dismissed with prejudice count V of his first and second amended complaints. Count V of plaintiff's complaints was an action to compel examination of records against the Association and the Board.

Defendants respond that plaintiff's request for records under section 19 of the Act (765 ILCS 605/19 (West 2012)) was issued nearly eight months after the filing of this lawsuit and that plaintiff issued Rule 214 document requests contemporaneously with the section 19 request. See Ill. S. Ct. R. 214 (eff. July 1, 2014). Thus, defendants were asked to produce the same documents twice. The trial court granted defendants' motion to dismiss count V on July 14, 2015, but did not provide any reasoning. Rather the order merely stated, "[t]he motion with respect to count V is granted."

¶ 32 Plaintiff specifically argues that the trial court dismissed count V based on the authority presented by defendants consisting of *Bruske v. Arnold*, 44 Ill. 2d 132, 135 (1969). As stated above, the record is devoid of any explanation as to how the trial court reached its decision in dismissing count V. Thus, we are perplexed as to how plaintiff is certain that the *Bruske* case was the basis for its ruling. In *Bruske*, the trial court suppressed the defendant's statement prior to trial as being illegally and unethically produced where the statement was taken at the defendant's home, without notice to her counsel, despite the plaintiff's counsel's knowledge that the defendant was represented. *Id.* at 134. The *Bruske* court stated, "[i]n our courts, once a lawsuit has been filed, and all parties have appeared, the pretrial search for matters relevant to the pending litigation is controlled by discovery rules promulgated by this court." *Id.* at 135.

¶ 33 Plaintiff contends that *Bruske* is procedurally inapplicable and factually distinguishable. Defendants respond that, even if the facts of *Bruske* are not exactly on point, plaintiff still cannot ignore the fact that courts recognize that once a suit has been filed, the litigation is controlled by discovery rules. We agree with defendants. It would be duplicative and contrary to our settled law to require litigants to comply with both the rules of discovery and a section 19 request that was propounded subsequent to a lawsuit's filing. Once again, such a requirement would run contrary to common sense, and we refuse to impose such a burden on defendants here.

¶ 34                                    CONCLUSION

¶ 35 Based on the foregoing, we find that the circuit court properly dismissed plaintiff's second amended complaint with prejudice as a result of defendants' section 2-619(a)(9) motion to dismiss.

¶ 36        Affirmed.