# Illinois Official Reports

## Appellate Court

---

### *Bramlett v. Vandersand*, 2020 IL App (5th) 180307

---

| | |
|---|---|
| Appellate Court Caption | PHIL BRAMLETT, Plaintiff-Appellant, v. KELLY B.C. VANDERSAND, Executor of the Estate of Dorothy Jean Edwards, Deceased, Defendant-Appellee. |
| District & No. | Fifth District<br>No. 5-18-0307 |
| Filed | February 18, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Jackson County, No. 10-L-53; the Hon. Christy W. Solverson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Mark D. Prince and Tyler N. Dihle, of Prince Law Firm, of Marion, for appellant.<br><br>Charles E. Schmidt and Jerrod H. Montgomery, of Brandon & Schmidt, of Carbondale, for appellee. |
| Panel | JUSTICE CATES delivered the judgment of the court, with opinion. Presiding Justice Welch and Justice Overstreet concurred in the judgment and opinion. |

**OPINION**

¶ 1        Plaintiff, Phil Bramlett, filed a negligence action against his mother-in-law, Dorothy Jean Edwards, in the circuit court of Jackson County. Plaintiff alleged that he sustained personal injuries as a result of Dorothy's failure to turn off the power to an outdoor light fixture that Dorothy asked plaintiff to repair. Dorothy passed away shortly after this lawsuit was filed, and Kelly B.C. Vandersand, as executor of the estate of Dorothy Jean Edwards, deceased, was substituted as the party defendant. Defendant filed a pretrial motion *in limine* seeking to bar plaintiff from offering a statement made under oath by decedent on the ground that plaintiff's counsel had improperly taken the statement in violation of Rule 4.3 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct (2010) R. 4.3 (eff. Jan. 1, 2010)). The circuit court granted defendant's motion *in limine* and subsequently granted defendant's motion for summary judgment. On appeal, plaintiff contends that the circuit court erred in barring decedent's statement because defendant failed to establish that plaintiff's counsel violated Rule 4.3. Plaintiff further contends that summary judgment was improper because the admissions made in decedent's statement were admissible as substantive evidence of negligence. For the reasons that follow, we reverse and remand.

¶ 2                                            I. BACKGROUND
¶ 3        According to the complaint, on March 29, 2010, plaintiff was mowing the grass at decedent's (Dorothy's) home, when decedent asked plaintiff to check on an outdoor light that was not working properly. Plaintiff agreed and asked decedent to turn off the power to the light switch. Decedent went into the house but forgot to turn off the power. Decedent was battling advanced cancer, and she was allegedly shaken by some difficult news she had received from her doctor that day. After plaintiff finished mowing, he set up a ladder so that he could inspect the light, which was mounted on an outdoor pole. When plaintiff touched the light, he received an electrical shock, fell from his ladder, and was injured.

¶ 4        On April 21, 2010, plaintiff's attorney sent a lien letter to decedent's insurance provider. Plaintiff's attorney advised that he had been retained to represent plaintiff in a personal injury claim arising from the incident on March 29, 2010. On June 14, 2010, plaintiff's counsel, along with a certified court reporter, went to decedent's home, at decedent's request, and took a statement regarding decedent's account of the March 29, 2010, incident. This "Statement Under Oath" was taken and transcribed by the court reporter.

¶ 5        On June 18, 2010, plaintiff filed this negligence action against decedent. Plaintiff alleged that he sustained injuries as a result of decedent's negligence in failing to turn off the electrical power to the outside light or failing to warn plaintiff that the electrical power to that light was not turned off.

¶ 6        On July 16, 2010, an attorney appeared on behalf of decedent and filed an answer and affirmative defenses. Counsel also filed a suggestion of death, announcing that decedent had passed away on July 6, 2010. On July 27, 2010, Kelly B.C. Vandersand, executor of the estate of Dorothy Edwards, was substituted as the party defendant in the case.

¶ 7        In December 2011, defendant filed a motion for summary judgment, supported by an expert's affidavit. Defendant asserted that she was entitled to judgment as a matter of law because the uncontroverted evidence demonstrated that the power to the outside light did not

pass through a circuit breaker or fuse box inside the home. Therefore, decedent could not have turned off the power to that light from inside her home.

¶ 8     On February 8, 2012, plaintiff filed a motion to conduct discovery before filing a response to the summary judgment motion. Plaintiff's motion asserted that he had not had an opportunity to depose defendant's expert, and it appeared that the subject light fixture and wiring had been removed and discarded prior to the inspection by defendant's expert. Plaintiff further indicated that he intended to file an amended complaint. On that same day, plaintiff filed a motion to amend his complaint to add a count for spoliation of evidence based on defendant's alleged failure to preserve the light fixture and wiring. Plaintiff's motion to amend was subsequently granted.

¶ 9     On June 26, 2012, defendant filed a motion for summary judgment, attacking the newly added count for spoliation of evidence. Defendant claimed that the light fixture in question had been removed before her July 21, 2010, appointment as executor of decedent's estate and that she had no duty to preserve evidence prior to her appointment. Defendant submitted a supporting affidavit from Maria Hafford, an employee of defendant's homeowner's insurer. Hafford stated that she had visited the property on July 15, 2010, for purposes of examining and photographing the scene. Hafford averred that on that day, she did not see the light fixture on the pole or anywhere else on the property.

¶ 10     On August 6, 2012, plaintiff filed a response in opposition to defendant's motion for summary judgment. Plaintiff explained that the original allegations of spoliation had not been artfully drafted and that he should have specifically alleged that it was the decedent who allowed the subject light fixture to be removed. Plaintiff sought and was granted leave to file a second amended complaint. In count II of the second amended complaint, plaintiff alleged that "prior to July 6, 2010, Dorothy Edwards, or her agents, allowed and permitted the subject light fixture, wiring, electrical box and connections to be discarded." On November 7, 2012, defendant filed a motion to strike, dismiss, or make more definite and certain the allegations in count II. Defendant asserted that the reference to "agents" of decedent was vague and uncertain. Defendant asked the court to strike the allegations or require plaintiff to identify the alleged agents of decedent. Defendant also filed a demand for a bill of particulars to identify the alleged agents.

¶ 11     On August 3, 2015, plaintiff was granted leave, over objection, to amend his complaint to add a count alleging that decedent voluntarily undertook the responsibility to turn off the power to the outside light. On August 31, 2015, defendant filed a motion to dismiss count II and count III of the third amended complaint. Defendant asserted that count II was vague and indefinite because the individuals who allegedly acted as agents of decedent were not identified. Defendant noted that she had made a demand for a bill of particulars in November 2012 and that plaintiff had failed to furnish a bill of particulars or otherwise respond to that demand. Defendant argued that her ability to prepare a defense to count II was impaired, and she asked the court to dismiss count II with prejudice. Defendant also sought the dismissal of count III, arguing that the allegations in count III were identical to those in count I.

¶ 12     On September 10, 2015, defendant filed a trial memorandum and pretrial motions *in limine*. In the "Second Motion *In Limine*" defendant sought to bar the "Statement Under Oath" given by decedent on June 14, 2010. Defendant claimed that plaintiff's counsel violated Rule 4.3 of the Illinois Rules of Professional Conduct of 2010 when he took decedent's statement. Defendant asserted that plaintiff's counsel violated Rule 4.3 by failing to inform decedent

(a) that counsel represented plaintiff and that plaintiff's interests were adverse to decedent's interests, (b) that decedent's statements could be used against her in a future legal proceeding, and (c) that decedent had a right to counsel and that it would be in decedent's best interest to have advice of counsel. Defendant also argued that plaintiff's counsel violated Rule 4.3 when he failed to explain his adversarial role to decedent on the record and failed to notify decedent's insurer about the taking of the statement, as he knew the identity of the insurer.

¶ 13 Defendant filed a memorandum in support of the "Second Motion *In Limine*" and claimed that the circumstances surrounding the statement created an environment of misunderstanding. Defendant argued that decedent had lost her husband about a month prior to giving the statement and that decedent was dealing with an advanced form of cancer and was on pain medication when she gave the statement. Defendant stated, upon information and belief, that one of decedent's daughters, whom decedent often relied on, was asked to leave before the statement was taken. Noting that the statement was taken at decedent's home before a court reporter and that plaintiff's counsel posed leading questions, defendant suggested that many people find such conditions intimidating. Defendant also argued that although decedent testified that she had requested that the attorney take her statement, the decedent also testified that someone else had called the lawyer's office and made the arrangements for the statement.

¶ 14 The transcript of decedent's "Statement Under Oath" was attached to the defendant's motion *in limine*. In her statement, decedent testified that she understood that she was giving a statement under oath and before a court reporter. Decedent stated that her medical condition did not affect her ability to comprehend and remember things that had happened in the past few months. Decedent further stated that she took pain medication and that the medication had not affected her memory. Decedent indicated that she felt comfortable and felt like she could answer questions under oath.

¶ 15 Plaintiff's counsel then inquired of the decedent about the March 29, 2010, incident. Decedent stated she had been to a medical appointment on March 29, 2010. During that appointment, decedent received upsetting news about her health condition. When she returned home, plaintiff was mowing decedent's lawn. Decedent recalled that she had been having trouble with an outside dusk-to-dawn light. She asked plaintiff to look at the light. Plaintiff then asked decedent to turn off the electrical power to the light, and decedent indicated she would. Decedent stated that she understood that plaintiff wanted her to go into the house and turn off the breaker on the electric panel. Decedent also understood that a person could be shocked if the breaker was not turned off. Decedent indicated that she was upset and distracted by her medical condition. She forgot to turn off the power when she went into the house. Decedent was lying down when her grandson rushed in and reported that plaintiff fell and was lying on the ground.

¶ 16 While taking the "Statement Under Oath," plaintiff's counsel asked decedent if she had signed a statement before a notary public on April 4, 2010. Decedent indicated that she had done so. The notarized statement was marked as Exhibit A and shown to decedent. Decedent identified her signature on the document and testified that the statements in the notarized document were true and accurate. The notarized statement, dated April 4, 2010, was appended to the "Statement Under Oath" and read as follows:

> "I, Dorothy Edwards, state that on March 29, 2010, around 1:00 p.m., I returned home from the doctor and my son-in-law, Philip Bramlett, was mowing my lawn. I had asked him to look at an outside light on my house that was turning off and on. He told me

that he would look at it and work on it for me and he asked me to turn of [*sic*] the power to the light. I then went inside to do so, but was distracted by the disturbing news I received at the doctor regarding my health and it slipped my mind to turn off the power to the light resulting in my son-in-law being injured."

¶ 17    Plaintiff's counsel then asked decedent whether the statements she had given under oath before the court reporter were true and accurate. Decedent stated that her account was true and accurate and that no one had promised her anything in exchange for giving her statement. When asked whether plaintiff's counsel had pressured her or otherwise made her feel uncomfortable about giving her statement under oath, decedent replied, "No." Decedent stated that she had requested to give her statement to plaintiff's counsel and that someone acting on her behalf contacted plaintiff's counsel. Decedent stated that she was of sound mind, despite her illness, and that she was aware of what was going on. Decedent was asked whether there was anything she wanted to add that might be important, and she replied, "No." Decedent was informed that she could read the transcript, and she elected to waive reading.

¶ 18    Defendant also attached the discovery deposition of Gina Bramlett in support of the "Second Motion *In Limine*." Gina testified, in pertinent part, that she was present when decedent gave her "Statement Under Oath" on June 14, 2010. She stated that the lawyer, court reporter, and decedent were the only other persons present. Gina testified that decedent did not take any pain medication that morning because she wanted a clear mind. Gina recalled that decedent was able to give her statement while sitting on the couch.

¶ 19    On September 28, 2015, plaintiff's counsel filed a motion to stay the proceedings. Plaintiff's counsel advised that he had self-reported the ethical violations alleged by defendant's counsel to the Attorney Registration and Disciplinary Committee (ARDC). Plaintiff's counsel requested that the court stay all proceedings and rulings pending a response from the ARDC. Following a hearing on October 1, 2015, the court granted plaintiff's motion to stay all proceedings.

¶ 20    On August 3, 2016, a new attorney[1] appeared on behalf of plaintiff and filed a suggestion of death, advising that plaintiff's counsel had died in a plane crash on June 6, 2016. At that time, the alleged ethics violation was still pending with the ARDC.

¶ 21    On December 22, 2016, defendant filed a supplemental memorandum in support of her "Second Motion *In Limine*." Defendant asserted that because both decedent and plaintiff's counsel had passed away, there was no evidence from any source to demonstrate that plaintiff's counsel had acted in accordance with Rule 4.3 of the Rules of Professional Conduct of 2010 when counsel took decedent's "Statement Under Oath." Plaintiff filed a response in opposition to defendant's "Second Motion *In Limine*." Therein, plaintiff asked the court to deny the motion and allow plaintiff to introduce the decedent's statement. Plaintiff argued that, at the time of the statement, no lawsuit had been filed and plaintiff's counsel did not state or imply that he was disinterested. Plaintiff claimed that there was no authority for barring a statement where there was no discovery violation, and only a possible violation of the ethical rules.

---

[1]Plaintiff's successor counsel withdrew due to a conflict, and a third attorney appeared on plaintiff's behalf. Plaintiff's current counsel was retained to pursue this appeal and was not part of the proceedings before the circuit court.

¶ 22    On March 23, 2018, the court entered a one-line order granting defendant's "Second Motion *In Limine*," without comment. The court also granted defendant's motion to dismiss count II and count III of plaintiff's third amended complaint.

¶ 23    Defendant then filed a motion for summary judgment as to count I of the third amended complaint. Defendant argued that under the Dead-Man's Act (735 ILCS 5/8-201 (West 2012)), plaintiff was prohibited from testifying about the events in question, or any conversations that had occurred between him and Dorothy Edwards, and that because decedent's June 14, 2010, "Statement Under Oath" had been barred by the court, there was no admissible evidence to establish negligence on the part of decedent. Plaintiff filed a motion in opposition and argued that there was a material issue of fact as to decedent's negligence under the doctrine of *res ipsa loquitur*.

¶ 24    Defendant's motion for summary judgment was called for hearing on May 10, 2018. In a docket entry dated May 11, 2018, the court granted summary judgment in favor of defendant, finding that there were no issues of fact and that the "Deadman's Act precludes testimony regarding conversations or acts of the deceased defendant or others in her presence."

¶ 25                                            II. ANALYSIS

¶ 26    On appeal, plaintiff claims that the circuit court erred in barring decedent's "Statement Under Oath" because defendant failed to establish by clear and convincing evidence that plaintiff's counsel obtained the statement in violation of Rule 4.3 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct (2010) R. 4.3 (eff. Jan. 1, 2010)). Defendant counters that the circuit court did not abuse its discretion in finding a violation of Rule 4.3 and did not err when the court barred decedent's "Statement Under Oath" as a sanction for that violation.

¶ 27    The record demonstrates that the circuit court granted defendant's motion to bar decedent's statement based upon the court's review of the pleadings and arguments of counsel. The court did not hold an evidentiary hearing. The court did not set out factual findings or the reasons or the basis for the sanction. Whether to impose sanctions generally rests within the sound discretion of the trial court, and the court's decision will not be disturbed absent an abuse of discretion. *Cretton v. Protestant Memorial Medical Center, Inc.*, 371 Ill. App. 3d 841, 848 (2007); *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 188 (2005). Nevertheless, a court of review will conduct an independent review of questions of law presented by the order. *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill. App. 3d 979, 986 (1993). Thus, we will consider whether the sanction order was predicated upon the proper understanding and application of the ethical principles at issue. *Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.*, 116 Ill. App. 3d 1043, 1054 (1983); *SK Handtool Corp.*, 246 Ill. App. 3d at 986.

¶ 28    The rules of professional conduct are intended to protect the attorney-client relationship, maintain public confidence in the legal profession, and ensure the integrity of legal proceedings. *SK Handtool Corp.*, 246 Ill. App. 3d at 989; see Ill. R. Prof'l Conduct (2010), Preamble (eff. Jan. 1, 2010). Where an attorney has failed to abide by our rules of professional responsibility in the course of litigation, a court may impose an appropriate sanction to ensure the integrity and orderly process of the proceeding. See *Bruske v. Arnold*, 44 Ill. 2d 132, 136 (1969).

¶ 29    Rule 4.3 of the Rules of Professional Conduct of 2010 addresses situations involving an attorney's interactions with persons who are not represented by counsel. Ill. R. Prof'l Conduct (2010) R. 4.3 (eff. Jan. 1, 2010). Rule 4.3 provides as follows:

> "In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client." Ill. R. Prof'l Conduct (2010) R. 4.3 (eff. Jan. 1, 2010).

¶ 30    Under Rule 4.3, when a lawyer communicates with an unrepresented person, the lawyer shall not tell or give an impression that the lawyer has no personal or professional interest in the matter. In circumstances where a lawyer knows or reasonably should know[2] that the unrepresented person misunderstands the lawyer's role, the lawyer would typically identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person. Ill. R. Prof'l Conduct (2010) R. 4.3 cmt. 1 (eff. Jan. 1, 2010).

¶ 31    In this case, defendant argued that the decedent had little understanding of the law and that the circumstances surrounding the taking of her "Statement Under Oath" created an atmosphere of misunderstanding that plaintiff's counsel did not attempt to correct. After reviewing the record, we find that the factual basis supporting defendant's contention is without merit. The record demonstrates that the decedent's statement was taken by plaintiff's counsel before this action was filed. Decedent was not a party, and she was not represented by counsel. The record clearly demonstrates that decedent was living with advanced cancer at the time she gave the statement. There is no evidence, however, that decedent was incompetent or unable to make her own decisions about her affairs. To the contrary, decedent seemed to understand and provide appropriate responses to the questions posed by plaintiff's counsel. Decedent was clearly able to recall the events of the day.

¶ 32    In the "Statement Under Oath," decedent acknowledged that she had requested to meet with plaintiff's counsel and that someone acting at decedent's direction had contacted plaintiff's counsel to make arrangements for giving the statement. Decedent stated that plaintiff's counsel did not initiate contact with decedent and that plaintiff's counsel did not coerce decedent to give a statement. The record contains no evidence that plaintiff's counsel engaged in any trickery, manipulation, or deception in order to obtain the statement. There is no indication that plaintiff's counsel stated or implied that he was a disinterested, objective, neutral actor. Moreover, there is no evidence to indicate that decedent misunderstood the role of plaintiff's counsel. Upon reviewing the record, it is equally reasonable to conclude that decedent's actions and decisions reflected a clear understanding of her situation. Decedent was aware that her son-in-law had been injured while helping decedent maintain her property. Decedent gave her "Statement Under Oath" and acknowledged that she had forgotten to turn

---

[2]The term "reasonably should know" "when used in reference to a lawyer denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question." Ill. R. Prof'l Conduct (2010) R. 1.0(j) (eff. Jan. 1, 2010).

off the power to the light fixture. It is also reasonable to conclude that decedent may have wanted to preserve her testimony before she passed away or became too ill to relate the circumstances of what had occurred. In summary, based upon the record in this case, we do not find a sufficient factual basis from which to find that plaintiff's counsel violated Rule 4.3.

¶ 33 Defendant relied upon *Bruske* in support of her assertion that evidence may be excluded as a sanction for an ethical violation. In *Bruske*, a private investigator employed by plaintiff's counsel appeared at defendant's home with a court reporter and took a statement from the defendant concerning the subject of the litigation. *Bruske*, 44 Ill. 2d at 134. The statement was taken after the filing of a negligence action and the appearance of defendant's counsel, and without notice to defendant's counsel. Thus, *Bruske* involved *ex parte* communications with a party defendant who was represented by counsel. Our supreme court determined that plaintiff's counsel's failure to abide by the rules of discovery and the rules of ethics must carry an appropriate sanction and that the exclusion of defendant's statement was an appropriate sanction for the unethical conduct. *Bruske*, 44 Ill. 2d at 136. Unlike the facts presented in this case, the circumstances in *Bruske* established a clear violation of the rules of discovery and a violation of the prohibition against *ex parte* communications with persons represented by counsel under Canon 9[3] of the Canons of Ethics (Canons of Ethics Canon 9 (Am. Bar Ass'n 1908), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/1908_code.pdf [https://perma.cc/6RXQ-MB86]). *Bruske*, 44 Ill. 2d at 134.

¶ 34 Accordingly, based on this record, we do not find a sufficient factual basis from which to find that plaintiff's counsel acted in violation Rule 4.3 of the Rules of Professional Conduct of 2010. Therefore, under the circumstances presented here, the imposition of a sanction barring decedent's statement was improper, and the circuit court's order prohibiting use of the "Statement Under Oath" for violating Rule 4.3 is hereby vacated.

¶ 35 So that our decision is not misunderstood, we are compelled to point out that we are not endorsing plaintiff's counsel's actions. Had plaintiff's counsel simply made a record, identifying his client, and explaining his role and purpose to the decedent at the outset of taking the statement, counsel may not have been confronted with this issue. Nevertheless, under the circumstances presented here, where no lawsuit had been filed, where decedent had already given a notarized statement recording the events of the day, and where decedent had summoned plaintiff's counsel, we cannot find that the sanction imposed was warranted.

¶ 36 We are also troubled by the manner in which this sanction came before the trial court, as the "Second Motion *In Limine*" was filed on September 10, 2015, during the final pretrial conference. Trial was set to begin on October 5, 2015, in a case that had been pending since June 18, 2010. The statement which gave rise to the allegations of professional misconduct was taken on June 14, 2010, over five years prior to defendant's counsel raising the alleged violation. It is clear from the record that defense counsel was aware of the statement well prior to filing the "Second Motion *In Limine*," and yet there is nothing in the record to suggest that defense counsel raised this issue with the court until the week prior to trial. As a result of the filing of this motion, plaintiff's counsel immediately self-reported to the ARDC, thus causing a stay of the proceedings in a case that had been pending for over five years.

_____

[3]Canon 9 of the Canons of Ethics was a predecessor to Rule 4.2 of the Illinois Rules of Professional Conduct of 2010. Rule 4.2 addresses a lawyer's responsibility when communicating with a person represented by counsel.

¶ 37    A lawyer has a duty to notify the appropriate professional authority when the lawyer knows that another lawyer has engaged in professional misconduct involving dishonesty, fraud, deceit, or misrepresentation, unless protected by attorney-client privilege. See Ill. R. Prof'l Conduct (2010) R. 8.3 (eff. Jan. 1, 2010); *In re Himmel*, 125 Ill. 2d 531, 539 (1988). Had there been a good faith belief that plaintiff's counsel had, indeed, violated Rule 4.3, it was then incumbent upon those believing said conduct to be true to make a commitment report to the ARDC. Defense counsel waited until the week before trial to raise the issue, even though he was aware of the alleged violation for several years prior to the scheduled trial date. We take this opportunity to admonish advocates that allegations of professional misconduct are to be taken seriously and should not be "invoked by opposing parties as procedural weapons." Ill. R. Prof'l Conduct (2010), Preamble (eff. Jan. 1, 2010).

¶ 38    Plaintiff next argues that the circuit court erred in entering summary judgment in favor of defendant because the admissions made by decedent in her "Statement Under Oath" were not barred by the Dead-Man's Act (735 ILCS 5/8-201 (West 2012)). Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). An order granting summary judgment is reviewed *de novo*. *In re Estate of Rennick*, 181 Ill. 2d 395, 401 (1998).

¶ 39    The Dead-Man's Act provides in pertinent part as follows:

"In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under a legal disability or to any event which took place in the presence of the deceased or person under legal disability, except in the following instances:

(a) If any person testifies on behalf of the representative to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability, any adverse party or interested person, if otherwise competent, may testify concerning the same conversation or event.

(b) If the deposition of the deceased or person under legal disability is admitted in evidence on behalf of the representative, any adverse party or interested person, if otherwise competent, may testify concerning the same matters admitted in evidence." 735 ILCS 5/8-201 (West 2012).

¶ 40    The Dead-Man's Act is intended "to protect decedents' estates from fraudulent claims and to equalize the position of the parties in regard to the giving of testimony." *Gunn v. Sobucki*, 216 Ill. 2d 602, 609 (2005). The Dead-Man's Act does not bar testimony regarding facts that the decedent could not have refuted. *Balma v. Henry*, 404 Ill. App. 3d 233, 240 (2010). The application of the Dead-Man's Act is not limited to trials. See *Balma*, 404 Ill. App. 3d at 238. It is proper to apply the Dead-Man's Act in the context of a summary judgment proceeding because a motion for summary judgment is an adjudication of a claim on the merits and is the procedural equivalent of a trial. *Balma*, 404 Ill. App. 3d at 238.

¶ 41    An admission by a party opponent is substantive evidence, admissible as a recognized exception to the rule against hearsay. *Rennick*, 181 Ill. 2d at 406; Ill. R. Evid. 801(d)(2) (eff. Oct. 15, 2015). An admission made by a party is admissible against that person's estate after

death. *Rennick*, 181 Ill. 2d at 405. Death does not erase an admission from a party's lips. *Rennick*, 181 Ill. 2d at 405. In this case, the "Statement Under Oath" contains relevant admissions by the decedent. These admissions are not barred by the Dead-Man's Act. *Rennick*, 181 Ill. 2d at 405; *Balma*, 404 Ill. App. 3d at 238. Decedent's admissions create a genuine issue of material fact regarding decedent's negligence. Thus, the circuit court erred in granting a summary judgment in favor of defendant.

¶ 42                                              III. CONCLUSION

¶ 43        The imposition of a sanction barring decedent's "Statement Under Oath" was improper where defendant failed to establish a sufficient factual basis from which to find that plaintiff's counsel violated Rule 4.3. The admissions in decedent's "Statement Under Oath" are admissible as substantive evidence and create a genuine issue of material fact regarding defendant's negligence. Accordingly, the summary judgment order is reversed, and the cause is remanded for further proceedings consistent with this decision.

¶ 44        Reversed and remanded.