LEONARD CURRY, Plaintiff-Appellee *v.* DELETTA CURRY, Defendant-Appellant.

(No. 12711;

Fourth District—September 17, 1975.

Ray Moss, of Herrick, Rudasill & Moss, of Clinton, for appellant.

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington (Fred B. Moore, of counsel), for appellee.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

On August 9, 1973, Leonard Curry was granted a divorce from the appellant, Deletta Curry. Incorporated into the divorce decree was a property settlement which granted the marital residence, subject to a $2000 mortgage, and $29,000 to Mrs. Curry. It was stipulated in the settlement that Mrs. Curry was to pay her medical bills and attorney's fees out of the $29,000.

On November 15, 1973, Mrs. Curry filed a section 72 petition asking that the property settlement agreement be vacated and that a guardian ad litem be appointed to represent her interests. At the close of appellant's evidence in the hearing on this motion, Leonard Curry's attorney moved for a "directed verdict" and a dismissal of the petition. At the close of the hearing, the trial judge allowed this motion and dismissed the petition. Mrs. Curry appeals, reiterating the allegation of her section 72 petition that the property settlement must be vacated because she lacked the capacity to contract at the time of its formation and contending that it was error for the trial court to fail to appoint a guardian ad litem to represent her interests in the hearing on the section 72 petition.

■■ At the outset, we note technical errors which bring this court's jurisdiction into question. The docket entry for April 11, 1974, says only: "Motion * * * to dismiss petition heard and allowed. Petition dismissed." This language lacks the denial of relief required to make dismissal of a section 72 petition appealable. (Ill. Rev. Stat. 1973, ch. 110A, par. 304(b)(3).) We find, however, that the intent of the court

to deny relief is clear. Mrs. Curry had rested her case. The trial court judge said:

"The question is: What is there before the Court to indicate there was a lack of capacity? And I submit to you that that burden has not been met."

Given this language, the order dismissing the petition was clearly based on a finding that Mrs. Curry had failed to sustain the burden of proof on the central issue raised in her complaint. Consequently, we view the trial court's order as terminating the litigation and establishing appellate jurisdiction. *Peach v. Peach*, 73 Ill.App.2d 72, 218 N.E.2d 504.

Turning to the issues raised by the parties, we note that Mrs. Curry's petition requested appointment of a guardian ad litem in the following language:

"WHEREFORE, the defendant prays: * * * That the Court appoint a guardian-ad-litem to protect the interests of the defendant on the grounds that the defendant is mentally and emotionally unable to protect her own interests and that her interests should be protected by the Court."

Under section 54(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 54(3)):

"If a party is declared incompetent, that fact shall be suggested of record and the prosecution or defense shall be maintained by his representative, guardian ad litem or next friend, as may be appropriate."

Defendant did not cite nor can this court find any Illinois cases requiring the appointment of a guardian ad litem for an adult litigant where there has been no formal adjudication of incompetence. Even the foreign case cited by defendant, while implying that the court may have a duty to protect litigants who are actually incompetent but have not been judicially declared such, does not directly hold that it is reversible error for a trial court to fail to appoint a guardian for a person who has not been adjudged incompetent. (*Sengstack v. Sengstack* (1958), 4 N.Y.2d 502, 176 N.Y.S.2d 337, 151 N.E.2d 887. See also *Anonymous v. Anonymous* (1957), 3 App. Div. 2d 590, 162 N.Y.S.2d 984.) The one Illinois case that provides a useful analogy for the case at hand is *Kirkland v. Kirkland*, 38 Ill.App.2d 280, 186 N.E.2d 794. In that case, the lower court entered an order annulling a marriage. Plaintiff filed a petition to vacate and set aside the decree of annulment, alleging that she was never served with summons and that no guardian ad litem or conservator had been appointed to represent her in the annulment proceedings. In that case, she had been formally adjudged incompetent prior to the annulment proceedings. The appellate court, finding that she was

served but noting that she made no appearance, held that it was error for the trial court to have failed to appoint a guardian ad litem for an *unrepresented* insane defendant. The court went on to say, however, that the failure to appoint a guardian ad litem, being procedural only, did not deprive the court of the jurisdiction or render its decree void.

Defendant herein has never sought an adjudication of incompetence; it was her own testimony at the hearing on her section 72 petition that she had continued to manage her business affairs since the date of the divorce involved herein. She was represented at the hearing on the section 72 petition by counsel of her own choice, and there is no allegation that such counsel was incompetent or failed to represent her interests adequately.

■■ Section 54 says the prosecution or defense of a declared incompetent shall be maintained by a "representative, guardian ad litem or next friend, as may be appropriate." Under the circumstances of the instant case, there was no duty to appoint a guardian ad litem nor to conduct a competency hearing. Mrs. Curry's petition did not allege insanity or legal incompetence, but only mental and emotional inability to protect her own interests. Defendant had taken no steps to have herself declared incompetent or to forfeit any of the rights incident to legal competency, but desired instead only the court's protection in this one specific instance. We find no error in the trial court's determination to proceed with the hearing on the section 72 petition without appointing a guardian ad litem.

■■ There remains the question whether defendant's section 72 petition was properly dismissed. It is undisputed that the property settlement herein was a contract and that one may not be held to a contract he lacked the mental capacity to enter. Evidence as to Mrs. Curry's mental capacity at the time of the property settlement came from three sources. Her husband testified that he was aware his wife had various mental and emotional problems but that they were all caused by drug addiction. Mrs. Curry testified that she was extremely upset and confused throughout the divorce proceeding and that she had not discussed the settlement agreement with her attorney prior to signing it in the hallway outside the courtroom on the day of the divorce hearing. She testified that she did not understand the settlement but signed it anyway because her lawyer, Mr. Naylor, threatened to drop her case if she did not sign. Naylor was her third lawyer in the course of the divorce proceedings; she had discharged the first and the second had withdrawn from the case after discovering a conflict of interest. While Mrs. Curry's testimony at the hearing on her section 72 petition was confused and at times incoherent, it is apparently her claim that she had never discussed

the nature and extent of the property settlement with her lawyer and had not seen the interrogatories listing her husband's assets.

The third source of information about Mrs. Curry's mental capacity was the deposition of her psychiatrist, Dr. Douglas R. Bey. Dr. Bey testified that Mrs. Curry had a long history of mental illness, including auditory hallucinations, severe depression, and preoccupation with thoughts of suicide and of her husband's infidelity and lack of concern for her. Bey believed that Mrs. Curry's difficulties were frequently associated with drug usage, probably addiction to barbiturates. While he admitted that she was preoccupied even up to the time of the divorce proceedings with her husband's infidelity and a fear that her husband and son were trying to take advantage of her financially, Bey believed that Mrs. Curry knew what she was doing as far as financial matters were concerned. It was his impression from their consultation that she understood the financial aspects of a divorce proceeding and the overall structure and transaction of her husband's business. He testified repeatedly that she was extremely afraid of being taken advantage of financially and that, in his opinion, she was capable of looking out for herself as far as her financial interests were concerned.

■■ It was Mrs. Curry's responsibility under section 72 to support her petition "by affidavit or other appropriate showing as to matters not of record." (Ill. Rev. Stat. 1973, ch. 110, par. 72.) Hence, the burden of demonstrating incapacity to contract was on her, and a failure of proof in that regard forecloses her right to relief.

■■ There are few Illinois cases defining incapacity to execute a contract. It has been said that not every insane delusion will avoid an instrument, but only such delusions as are directly connected with the subject matter of the transaction sought to be invalidated. (*Eubanks v. Eubanks*, 360 Ill. 101, 195 N.E. 521.) The testimony at this hearing tended to show that Mrs. Curry had severe mental and emotional problems, many of them involving her relations with her husband. As to financial matters, her testimony is at odds with that of her psychiatrist. While she contends that she was too ill and frightened to explore the financial arrangements made for her at the time of the divorce proceeding, her psychiatrist testified that she discussed these matters with him repeatedly and appeared to understand them in some detail. The trial court judge had the best opportunity to observe the witnesses and evaluate their credibility and his findings as to factual matters will not be disturbed unless palpably erroneous. (*People v. Arndt*, 50 Ill.2d 390, 280 N.E.2d 230.) There was clear and convincing testimony in this record that Mrs. Curry was highly conscious of her financial interests and capable of protecting them at the time of the divorce settlement.

Her own testimony to the contrary is not conclusive and it was within the trial court's discretion to reject that testimony. We find no error in the dismissal of her petition to vacate the property settlement agreement.

Judgment affirmed.

SIMKINS, P. J., and GREEN, J., concur.