*In re* CHRISTOPHER KEISS, a Minor.—(CAROL KEISS, Petitioner-Appellant.)

Third District   No. 75-474

Opinion filed August 10, 1976.

Wysong & Beresoff, Ltd., of Downers Grove (Robert J. Wysong, of counsel), for appellant.

Martin Rudman, State's Attorney, and Robson, Masters, Ryan, Brumund & Belom, both of Joliet (Edward Masters, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Carol Keiss, mother of Christopher Keiss, an infant, appeals from a denial of her petition to vacate her surrender for adoption executed in open court.

The facts are not in dispute. Shortly after Christopher's birth on June 15, 1974, a petition was filed in the Will County Circuit Court, alleging that he was a neglected child, under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 701 *et seq.*) Between June 15, 1974, and June 20, 1975, the mother, who was unmarried, was voluntarily hospitalized two or three times for mental treatment necessitated in part by use of drugs, including LSD. Christopher was placed in a foster home through the Department of Children and Family Services. The mother was encouraged to visit her son, and custody was briefly returned to her in August, 1974, and again in March, 1975. During May of 1975, the mother had an abortion to terminate a second pregnancy.

On June 20, 1975, the mother appeared in the circuit court with counsel, and executed her final and irrevocable surrender for purposes of adoption. Subsequently, she underwent a hysterectomy, and on August 5, 1975, filed a petition to vacate the surrender, pursuant to section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72). After several amendments to the petition, the circuit court granted the State's motion to dismiss the petition with prejudice, and the mother appeals.

The issue before this court is whether the petition to vacate was legally sufficient. If so, then the trial court erred in dismissing the petition and denying the mother a hearing on the merits.

The amended petition alleged that the mother was "lacking in mental competence" at the time she executed the surrender, and recited the following facts:

"At the time of the execution of said surrender of June 20, 1975, petitioner was taking pills prescribed for a cerebral disturbance reflected by an EEG; moreover, at such time petitioner was

mentally disturbed and severely confused resulting from the then recent abortion and from a long history of psychiatric illness and was, in fact, lacking in mental competence, comprehension or any ability whatsoever to comprehend the nature of her acts or the logical or natural consequences thereof."

The petition also stated that the mother's "yes" answers to the judge's questions about her understanding of the legal effect of a surrender did not show that she was competent. The petition concluded with an assertion that section 11 of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—11) by implication "includes the grounds of incompetency or mental disturbance along with fraud or duress as grounds for setting aside a surrender for adoption."

In a memorandum opinion setting forth reasons for dismissal of the petition, the trial court agreed with the State's contention that the petition was insufficient at law because the only grounds for vacating an irrevocable surrender for adoption are those set out in the Adoption Act,[1] and thus are limited to fraud or duress on the part of the person before whom the surrender is acknowledged or on the part of the adopting parents or their agents. The court surmised that the legislature deliberately excluded mental incompetence as a ground for vacating a surrender and, after noting that the law's constitutionality was not questioned, refused to construe the statute to include such grounds by implication.

The court also found that the psychiatric and social worker's reports on file corroborated the presumption of sanity and competence, and did not support the allegations of incompetency.

■■ We must first consider whether, as a matter of law, a parent's mental incompetence can be a ground for vacating an irrevocable consent for adoption under the Adoption Act, in the absence of any claim of fraud or duress on the part of persons interested in obtaining the surrender. A parent previously adjudicated incompetent or mentally ill must be represented by a guardian ad litem who is vested with the power to consent, under section 8(e) of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—(e)). In the absence of a finding of incompetency, a person is presumed competent until the contrary is shown. *People ex rel. Drury v. Catholic Home Bureau* (1966), 34 Ill. 2d 84, 213 N.E.2d 507.

---

[1] Section 11 of the Adoption Act (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—11) provides: "A consent to adoption by a parent, including a minor, executed and acknowledged in accordance with the provisions of Section 8 of this Act, or a surrender of a child by a parent, including a minor, to an agency for the purpose of adoption shall be irrevocable unless it shall have been obtained by fraud or duress on the part of the person before whom such consent, surrender, or other document equivalent to a surrender is acknowledged pursuant to the provisions of Section 10 of this Act or on the part of the adopting parents or their agents and a court of competent jurisdiction shall so find. The consent or surrender of a parent who is a minor shall not be voidable because of such minority."

By definition, a presumption is a legal inference which can be overcome by the party challenging it, and the presumption of mental competency must be recognized for what it is. The burden of proof, of course, devolves upon the party alleging incompetence. (*Stoltze v. Stoltze* (1946), 393 Ill. 433, 66 N.E.2d 424.) The statutory forms of a surrender for adoption contains as a final clause the words "I have read and understand the above and I am signing it as my free and voluntary act." (Ill. Rev. Stat. 1975, ch. 4, par. 9.1—10 C.) Implicit in this language is the signatory's mental capacity to comprehend and to perform the act as an exercise of a free will. If a person is mentally incompetent, the signing cannot be voluntary. Hence, we conclude that a surrender for adoption executed by a mentally incompetent person is voidable to the same extent as a contractual undertaking entered into by a person lacking capacity to contract.

■■ The provisions of the Adoption Act relating to the irrevocability of surrenders obviously were designed to carry out a policy which recognizes the importance of providing a stable environment for an adopted child. A natural parent is prevented from rescinding his or her consent or surrender when misgivings later occur, as so often happens, unless the consent was given involuntarily. In furtherance of that purpose, Judge Angelo Pistilli, the trial judge, carefully questioned the mother concerning her understanding and comprehension of the legal effect and the finality of the surrender she proposed to execute. In addition to giving "yes" answers indicating that she understood, the mother, when asked if this was what she wanted to do, replied, "It's the best thing for Christopher." After signing the surrender, she later spoke up to ask the court to clarify whether she would be found unfit. When the court stated, "I'm not finding you to be unfit in any way," she responded, "Because I'm not." It is clear from the transcript of this proceeding that the mother gave close attention to the conversations between the attorneys and the judge, and that she participated fully in those discussions. She was represented by privately retained counsel at the time she executed the surrender, and had been represented by the same counsel for the past year during which she made seven appearances before Judge Pistilli in the neglect proceeding. In such a situation, only the most clear and convincing evidence of mental incompetence existing at the time of execution would be sufficient to overcome the presumptive validity of her surrender.

We cannot agree with the State that the mother waived the issue of incompetency by her failure to raise it in the surrender proceeding. It would be logically inconsistent to impute to this mother a waiver of the question of competency but to acknowledge, as we have, the voidability of her consent. If the surrender was involuntary by reason of incompetency, then so too was the waiver.

■■ The final question is whether the petition was legally sufficient. A section 72 petition has been explained as a remedy which "* * * enables a party to bring before the court rendering a judgment matters of fact not appearing in the record which, if known to the court at the time the judgment was entered, would have prevented its rendition * * * ." (*Brockmeyer v. Duncan* (1960), 18 Ill. 2d 502, 505, 165 N.E.2d 294.) In the same case, it was held that this remedy is not available unless the petitioner shows that, through no fault or negligence of his own, the error of fact was not made to appear to the trial court. Where the petition shows on its face that the petitioner is not entitled to the relief sought, it is subject to a motion to dismiss which, as in any civil action, admits the facts well pleaded. *Glenn v. People* (1956), 9 Ill. 2d 335, 137 N.E.2d 336.

Here the surrender which the mother seeks to vacate was a basis for a decree permanently terminating her parental rights which was entered a few days later. While a section 72 petition might more appropriately have been directed to the order rather than the surrender, the end result, in any event, would be a restoration of the mother's parental rights.

Looking at the matters of fact alleged in the petition in support of the mother's claim of mental incompetence, we find assertions that she was "taking pills prescribed for a cerebral disturbance reflected by an EEG" and that she was "mentally disturbed and severely confused" because of a recent abortion and "a long history of psychiatric illness." There is no allegation that these facts were not known to the court at the time the surrender was executed and the order entered.

Apparently there was nothing in the record before the trial court relating to the mother's second pregnancy or its termination, but that record did include periodic reports detailing her history of mental illness. The latest psychiatric report filed with the court stated that her "emotional condition has stabilized" although her "anxiety level" was high again as a result of attempting to live independently. The same report mentioned she was able to discontinue almost all tranquilizers and antidepressants previously prescribed.

The Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72(2)) states that the petition must be supported by affidavits or other appropriate showing as to matters not of record. No affidavits or other documents were filed in support of the petition here. There is nothing to show that the unidentified pills would affect the mother's mental capacity to the point where she could not comprehend what was being said to her. The bare assertions that she was "disturbed" and "confused," uncorroborated by medical affidavits or other relevant matters, are not sufficient to show mental incompetence. In *Curry v. Curry* (4th Dist. 1975), 31 Ill. App. 3d 972, 334 N.E.2d 742, a section 72 petition filed by the wife sought to vacate a property settlement agreement in a divorce decree on the ground

that she lacked the capacity to contract at the time the agreement was formulated. At the hearing on the petition, a psychiatrist testified to petitioner's long history of mental illness including hallucinations, severe depressions, preoccupation with thoughts of suicide, and her drug addiction. Nevertheless, the court found that she was capable of understanding and protecting her financial interests. In the case at bar, the petitioner made no claim of a legal disability as to any other time or any other matter except the June 20, 1975, execution of the surrender, similar to the claim in *Curry*.

■■ As stated earlier, the burden is on the mother to allege and prove matters of fact sufficient to overcome the presumption of competency by clear and convincing evidence. The court proceeding she attacks was conducted for the obvious purpose of determining her ability to understand what she was doing. In the face of a transcript which demonstrates so convincingly that she understood the proceedings and that she felt free to participate in them to protect her own interest in not being found "unfit," we must hold that this petition is insufficient on its face.

The mother contends that all questions as to the sufficiency of the allegations in the petition were waived because they were not raised in the motion to dismiss. We do not interpret the motion so narrowly. One of the grounds for dismissal was stated as follows:

> "That the allegations of mental incompetency, even if true, are not sufficient to vacate the consents, as per Section 9.1—11 of the Adoption Act."

We believe that statement placed the sufficiency of the allegations in issue.

For the reasons stated, we affirm the order of the trial court.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.