2022 IL App (1st) 221347
Opinion filed: December 22, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-22-1347

| | | |
|---|---|---|
| MARIA SANDERS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 19 L 013794 |
| | ) | |
| OAKBROOK HEALTHCARE CENTRE, | ) | |
| LTD., d/b/a Oakbrook Care, and | ) | |
| LANCASTER, LTD., | ) | Honorable |
| | ) | Moira Johnson, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Maria Sanders, sustained injuries from a fall in her nursing home. Plaintiff sued

the nursing home, Oakbrook Healthcare Centre, Ltd. (Oakbrook) and its alleged owner/operator,

Lancaster, Ltd. (Lancaster). Counts I and II against Oakbrook alleged violations of the Nursing

Home Care Act (Act) (210 ILCS 45/1-101 *et seq.* (West 2018)) and common-law negligence.

Count III alleged common-law negligence against Lancaster. Defendants filed a motion to dismiss

and to compel mediation and/or arbitration (hereinafter motion to dismiss and compel arbitration)

of counts I and II against Oakbrook. Defendants asked to stay count III against Lancaster, who

was not a party to the contract/arbitration agreement, pending the arbitration of counts I and II.

The circuit court denied the motion to dismiss and compel arbitration of counts I and II, which

also had the effect of mooting defendants' request to stay count III. Defendants filed this

interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). For the reasons that follow, we vacate the order denying defendants' motion to dismiss and compel arbitration of counts I and II and we remand for the court to conduct an evidentiary hearing/summary proceeding on the motion and plaintiff's response thereto pursuant to section 2(a) of the Uniform Arbitration Act (710 ILCS 5/2(a) (West 2018)).

¶ 2    Plaintiff filed her amended complaint alleging that she was a resident of Oakbrook, a skilled nursing facility, on October 2, 2018, when she suffered a fall and was subsequently hospitalized with a right hip fracture. In count I, plaintiff alleged that Oakbrook violated her rights under the provisions of the Act. Count II alleged that Oakbrook was negligent in its care and treatment of plaintiff. Count III alleged that Lancaster owned and managed Oakbrook and also was negligent in its care and treatment of plaintiff.

¶ 3    Defendants moved to dismiss counts I and II of the amended complaint and compel arbitration under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2020)) and to stay count III pending the arbitration of counts I and II. Defendants argued that on September 4, 2018, plaintiff voluntarily entered into and signed an admission contract with Oakbrook, a copy of which was attached to the motion. Subsection E of the contract stated:

> "Resident and Facility agree that all civil claims arising in any way out of this Agreement, other than claims by Facility to collect unpaid bills for services rendered, or to involuntarily discharge Resident, shall be resolved exclusively through mandatory mediation, and, if such mediation does not resolve the dispute, through binding arbitration using the commercial mediation and arbitration rules and procedures of JAMS/Endispute in its Chicago, Illinois Office."

¶ 4    Defendants argued that pursuant to subsection E of the contract, plaintiff's civil claims against Oakbrook in counts I and II were subject to mandatory mediation, and if mediation failed, then her claims were subject to binding arbitration. Defendants attached the affidavit of Ken Anacay, Oakbrook's patient advocate who assisted in the process of admitting residents into the facility. This process included presenting and discussing the contract entered into between Oakbrook and each of its residents, including the mandatory arbitration provision contained therein. Anacay was involved in the admission of plaintiff to Oakbrook on September 4, 2018, and he would have employed his practice of presenting the contract to her and explaining the arbitration provision. Anacay and plaintiff each affixed their signature to the contract.

¶ 5    Plaintiff filed a response to defendants' motion to dismiss and compel arbitration of counts I and II, arguing that she lacked the mental capacity to sign the contract on September 4, 2018. In support, plaintiff attached the affidavit of a physician with board certification in internal medicine and geriatric medicine, David Seignious. Seignious reviewed plaintiff's medical records and stated that prior to her admission to Oakbrook, plaintiff was hospitalized at Loyola Hospital from August 14, 2018, through August 29, 2018, for persistent hypoglycemia, failure to thrive secondary to deconditioning and malnutrition, and urinary tract infection. Upon her admission to Oakbrook, plaintiff's admission diagnoses included a history of recurrent strokes (one as recent as May 2018) that resulted in residual right side weakness, abnormality of gait, dysphagia, and aphasia, which impaired her ability to express herself and otherwise communicate. Plaintiff required feeding by a gastrostomy tube due to malnutrition and recent infection. She also was on psychotropic medication for mood and behavior.

¶ 6    On September 4, 2018, the day plaintiff was presented with and signed the contract containing the arbitration provision, Oakbrook's social services team completed an assessment of

plaintiff. Plaintiff's assessment documented that she had been having trouble concentrating for several days, was speaking slower than usual, and scored a 6 on her "Brief Interview of Mental Status" (BIMS), which represented a "severe" level of impairment. Seignious stated:

"Given her underlying condition, medical history, comorbidities, her overall debilitated medical condition, assessments of impairment, expressive aphasia, and fluctuating mood, memory, and cognition, it is unlikely that [plaintiff] would have understood the contents of any legal documents, would have the ability to express/communicate any concerns that she did have, or would have understood the circumstances surrounding her admission to [Oakbrook]."

¶ 7 Plaintiff also attached the deposition testimony of Anacay, the Oakbrook patient advocate. Anacay testified that when a patient sought admission to Oakbrook, the admissions director, in conjunction with the social services team, first would determine whether the patient had the cognitive ability to understand and sign the contract. If the admissions director and social services team determined that the patient lacked such cognitive ability, the patient's family member was contacted so that they could obtain a power of attorney to sign on the patient's behalf.

¶ 8 Anacay's job was to sit down with the patient who wished to be admitted to the nursing home (and/or with the person who had power of attorney to sign for the patient) and review the contract with them "section by section" so that they understood what they were being asked to sign. Anacay admitted, though, that if the patient had any questions about arbitration, he would have had difficulty answering them as he did not himself understand what arbitration entailed, nor did he understand the rights that the patient was waiving by agreeing to the arbitration provision. Any such questions would have been referred to the admissions director.

¶ 9 Anacay had no specific recollection of plaintiff or of presenting her with the contract and reviewing it with her and, as such, had no recollection of whether plaintiff had any questions about subsection E's arbitration provision. Anacay did not remember whether he had any discussions with the social services team prior to presenting and reviewing the contract with plaintiff on September 4, 2018, nor did he remember whether the social services team had assessed plaintiff as being severely impaired on that date.

¶ 10 In addition to arguing that plaintiff lacked the mental capacity to sign the admission contract on September 4, 2018, she also argued that the contract was procedurally unconscionable because she did not participate in the drafting of the agreement; had no bargaining power; was mentally impaired such that she was unable to understand its contents, including the ramifications of the arbitration provision; was physically unable to communicate any questions or concerns about the contract due to the aphasia resulting from her recurrent strokes; and even if she had been able to voice any questions or concerns about the arbitration provision, Anacay himself had no knowledge about arbitration and thus would not have been able to answer her questions.

¶ 11 Defendants filed a reply, arguing that Seignious's affidavit regarding plaintiff's lack of mental capacity should be stricken because it violated the requirement of Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) that the affidavit be made on his personal knowledge, where he never saw or treated plaintiff and based his findings solely off of a review of her medical records. Defendants also argued that plaintiff is presumed to have the mental capacity to enter into the admission contract pursuant to section 2-202(a) of the Act, which states:

> "An adult person shall be presumed to have the capacity to contract for admission to a long term care facility unless he has been adjudicated a 'person with a disability' within

the meaning of Section 11a-2 of the Probate Act of 1975, or unless a petition for such an adjudication is pending in a circuit court of Illinois." 210 ILCS 45/2-202(a) (West 2018).

¶ 12    Defendants argued that plaintiff has never been adjudicated a person with a disability under the Probate Act of 1975 (Probate Act) (755 ILCS 5/11a-2 (West 2018)), nor is a petition for such an adjudication pending, and that in the absence thereof, she is presumed to have the capacity to enter into the admission contract (with the accompanying arbitration provision).

¶ 13    Finally, defendants argued that no procedural unconscionability existed during the formation of the contract. Procedural unconscionability consists of an impropriety during the process of contract formation that deprives a party of meaningful choice. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011). In determining whether a contract is procedurally unconscionable, all the circumstances surrounding the transaction are considered, including whether each party had the opportunity to understand the contract terms, whether important contract terms were hidden in the fine print, and the manner in which the contract was entered into. *Kinkel v. Cingular Wireless, LLC*, 223 Ill. 2d 1, 23 (2006).

¶ 14    Defendants argued that procedural unconscionability is lacking here, as the admission contract was presented and signed at Oakbrook, where plaintiff already was residing; she had a reasonable opportunity to review the contract, as she was not rushed into reading it and Anacay reviewed it with her page by page and would have referred any questions to the admissions director; and the arbitration provision was not hidden in the fine print but instead was conspicuously set forth in bold and large font in subsection E, just the same as all the other subsections.

¶ 15    The circuit court denied the motion to dismiss and compel arbitration on counts I and II, finding that there is a genuine issue of fact as to whether plaintiff lacked the capacity to enter into

the admission contract containing the arbitration provision. The court also found the contract to be procedurally unconscionable. The court's denial of defendants' motion to dismiss and compel arbitration of counts I and II mooted the request to stay count III against Lancaster. Defendants filed their notice of interlocutory appeal, pursuant to Rule 307(a)(1), from the order denying their section 2-619(a)(9) motion to dismiss and compel arbitration on counts I and II.

¶ 16    Rule 307(a)(1) permits interlocutory appeals from orders granting or refusing an injunction. *Herns v. Symphony Jackson Square LLC*, 2021 IL App (1st) 201064, ¶ 14. An injunction is a judicial process that requires a party to do a particular thing or refrain from doing a particular thing. *Id.* An order denying a motion to dismiss and to compel arbitration is injunctive in nature and is appealable under Rule 307(a)(1). *Id.*

¶ 17    Here, the motion to dismiss and to compel arbitration of counts I and II was brought under section 2-619(a)(9), which provides for dismissal when a claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). A section 2-619(a)(9) motion to dismiss should be granted only where no material facts are in dispute and the movant is entitled to dismissal as a matter of law. *Gelinas v. Barry Quadrangle Condominium Ass'n*, 2017 IL App (1st) 160826, ¶ 14. In deciding the motion, all well pleaded facts and the legal sufficiency of the complaint are taken as true. *Id.* Review is *de novo*. *Kero v. Palacios*, 2018 IL App (1st) 172427, ¶ 22.

¶ 18    Defendants argue that the circuit court erred in denying their motion to dismiss and compel arbitration on counts I and II of plaintiff's amended complaint, which raise civil claims that arose out of plaintiff's admission contract that she signed with Oakbrook. The contract contains a clause requiring that all such claims be resolved through mediation, and if mediation is unsuccessful, then through binding arbitration. The circuit court found that factual questions regarding plaintiff's

capacity to sign the contract required the denial of the motion to dismiss and compel arbitration. Defendants contend that the court's ruling was erroneous because section 2-202(a) of the Act expressly provides that, as an adult, plaintiff is presumed to have the capacity to enter into a contract for admission to a long term care facility unless she has been adjudicated a person with a disability pursuant to the Probate Act or unless a petition for such an adjudication is pending in the circuit court. Plaintiff has not been adjudicated a person with a disability, nor is such an adjudication pending in the circuit court. Therefore, defendants argue that plaintiff is presumed to have been capable of signing the contract of admission with Oakbrook under section 2-202(a) of the Act.

¶ 19    Resolution of this issue requires construction of section 2-202(a) of the Act. When construing a statute, our primary objective is to effectuate the legislative intent. *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 17. The best evidence of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* In determining legislative intent, we also may consider the reason for the law and the purpose to be achieved. *Id.*

¶ 20    We begin by considering the nature and purpose of the Act as a general guide to the legislative intent. Our supreme court has explained the genesis and objectives of the Act as follows:

> "The General Assembly enacted the [Act] amid concern over reports of 'inadequate, improper and degrading treatment of patients in nursing homes.' (Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 184 (statement of Senator Karl Berning).) The Act, described by a principal sponsor as a 'full reform of the nursing home industry' (Senate Debates, 81st Ill. Gen. Assem., May 14, 1979, at 181 (statement of Senator Richard M. Daley)), *** [instituted] a comprehensive statute which established standards for the

treatment and care of nursing home residents *** and expanded the power of the Illinois Department of Public Health to enforce the provisions of the Act." *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 357-58 (1986).

¶ 21　Our supreme court has further stated that the primary purpose of the Act is to protect the residents of nursing homes. *Lakewood Nursing*, 2019 IL 124019, ¶ 20. To achieve that goal, the Act established a comprehensive regulatory scheme safeguarding against the abuse and neglect of nursing home residents and ensuring that nursing home facilities comply with their statutory responsibilities. *Id.* (citing 210 ILCS 45/1-101 *et seq.* (West 2012)). One of those statutory responsibilities is set forth in section 2-202(a) of the Act, which provides that a written contract be executed between the facility and each resident, specifically identifying the services and care that the facility will provide. See 210 ILCS 45/2-202(a) (West 2018).

¶ 22　As correctly noted by defendants, section 2-202(a) expressly states that an adult person is "presumed" to be capable of entering into such a contract for admission to a long term care facility unless either of two exceptions (hereinafter disability exceptions) apply: (1) that she was adjudicated a disabled person within the meaning of section 11a-2 of the Probate Act or (2) a petition for such an adjudication is pending in the circuit court. In the instant case, neither of the disability exceptions are applicable, and therefore under section 2-202(a), plaintiff is presumed capable of entering into the contract of admission with Oakbrook, which includes the arbitration clause.

¶ 23　Our analysis is not finished, though, because by definition, "a presumption is a legal inference which can be overcome by the party challenging it." *In re Keiss*, 40 Ill. App. 3d 1071, 1074 (1976). A presumption ceases to operate once the party challenging it presents enough evidence to support a finding of the nonexistence of the presumed fact. *Franciscan Sisters Health*

*Care Corp. v. Dean*, 95 Ill. 2d 452, 462-63 (1983). Case law is clear that the presumption that a person had the capacity to enter into a contract is rebuttable by showing that they lacked the ability to comprehend the nature and effect of what they are doing. See *Barth v. Gregory*, 79 Ill. App. 3d 510, 522 (1979); *In re Marriage of Davis*, 217 Ill. App. 3d 273, 276 (1991). In a recent Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021) order, which may be cited for its persuasive authority as it was filed in 2021,[1] we expressly held that the presumption of capacity to enter into a nursing home contract and arbitration agreement is rebuttable by a showing that the patient was incapable of comprehending the nature and effect of what they were signing. *Taylor v. UDI #4, LLC*, 2021 IL App (4th) 210057-U, ¶¶ 49-56. Thus, the issue before us is whether plaintiff presented sufficient evidence rebutting the presumption that she had the capacity to enter into the admission contract/arbitration agreement with Oakbrook.

¶ 24    Defendants argue that section 2-202(a) of the Act sets forth the only two ways plaintiff may rebut this presumption that she had the capacity to sign the admission contract: by showing that she was adjudicated a person with a disability under the Probate Act or that a petition for such an adjudication is pending in the circuit court. As plaintiff has failed to show that she was adjudicated disabled or that a petition is pending, defendants argue that the presumption of her capacity to enter into the contract may not be overcome by any other evidence of plaintiff's inability to comprehend the nature and effect of what she was signing.

¶ 25    We disagree. Section 2-202(a) provides only that an adult person is "presumed" capable of contracting for admission to a long term care facility if neither of the disability exceptions apply;

---

[1]Rule 23(e) states that "a nonprecedential order entered under subpart (b) of this rule on or after January 1, 2021, may be cited for persuasive purposes." Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021).

section 2-202(a) does not state that such a presumption may not be rebutted with other evidence of plaintiff's incapacity. See 210 ILCS 45/2-202(a) (West 2018). To so hold that the presumption may not be rebutted would add words to the Act, changing its meaning. See *Wolf v. Toolie*, 2014 IL App (1st) 132243, ¶ 24 (holding that the appellate court cannot add words to a statute to change its meaning). Such a holding also would run counter to the well-established case law holding that the presumption of capacity to enter into a contract is rebuttable with evidence that the signatory lacked the ability to comprehend the nature and effect of what they were signing. See *Barth*, 79 Ill. App. 3d at 522; *Davis*, 217 Ill. App. 3d at 276. Also, defendants' construction of the Act requiring a nursing home resident to remain bound by a contract with a nursing home, even in the wake of evidence of their incapacity at the time of the signing of the contract, would run counter to the Act's purpose of protecting the residents of nursing homes against abuse and neglect. For all these reasons, we hold that section 2-202(a)'s presumption that an adult person has the capacity to contract for admission to a long term care facility is rebuttable by showing that they lacked the capacity to understand the nature and effect of what they were signing.

¶ 26     A recent Rule 23 order, *Kizart v. Heather Health Care Center, Inc.*, 2021 IL App (1st) 201193-U, which may be cited for its persuasive authority, addressed an issue similar to the one here, specifically, whether a nursing home resident presented sufficient evidence overcoming the presumption that he had the capacity to enter into an arbitration agreement with a nursing home. In *Kizart*, plaintiff was a nursing home resident who fell and injured himself. *Id.* ¶ 2. He brought an action against defendants for violations of the Act and common-law negligence. *Id.* ¶ 6. Defendants filed a section 2-619(a)(9) motion to dismiss the complaint and compel mediation and arbitration. *Id.* ¶ 7. Defendants argued that plaintiff voluntarily signed an arbitration agreement upon his admission to the nursing home that required the court to direct the parties to mediate the

dispute and, if resolution could not be achieved through mediation, then undergo binding arbitration. *Id.*

¶ 27    In response, plaintiff argued that the arbitration agreement was voidable because it was procedurally and substantively unconscionable and he lacked the mental capacity to enter into it. *Id.* ¶ 8. Plaintiff attached the affidavit of a physician, Daniel Swagerty, who attested that he reviewed plaintiff's medical records, which listed his active diagnoses for three mental illnesses and a seizure disorder and showed that he received medication that had the side effects of fatigue, anxiety, and nausea. *Id.* ¶ 13. Swagerty opined that plaintiff's underlying medical and psychiatric conditions prevented him from understanding the terms and content of the arbitration agreement. *Id.*

¶ 28    The circuit court granted defendants' motion to compel mediation and arbitration and dismissed plaintiffs' case. *Id.* ¶ 19. On plaintiff's appeal, we noted that arbitration agreements are contracts that may not be enforced if one of the parties thereto lacked the capacity to contract due to their inability to understand what they were signing. *Id.* ¶ 28. We found that Swagerty's opinion that plaintiff's underlying medical and psychiatric condition prevented him from understanding the arbitration agreement was sufficient to raise a question of fact as to his capacity to enter into the contract and whether the contract was unconscionable in light of his alleged incapacity. *Id.* ¶¶ 38-41.

¶ 29    Then we discussed section 2(a) of the Uniform Arbitration Act (710 ILCS 5/2(a) (West 2018)), which provides that where questions of fact exist regarding the validity of the arbitration agreement, the trial court must proceed summarily to a determination of the issues.

> " 'A summary proceeding may be defined, generally, as a civil or criminal
> proceeding in the nature of a trial conducted without the formalities (as indictment,

pleadings, and a jury) *** and used for the speedy and peremptory disposition of some minor matter. [Citations.] Thus, when the trial court is faced with a motion to compel arbitration, the court should act expeditiously and without a jury trial to make a substantive determination of whether a valid arbitration agreement exists, and to resolve any other issues raised by the motion to compel arbitration. [Citations.]' " *Kizart*, 2021 IL App (1st) 201193-U, ¶ 43 (quoting *Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 24-25).

¶ 30    Equating a summary proceeding with an evidentiary hearing, we reversed the circuit court's judgment granting defendants' motion to dismiss and compel arbitration and remanded for an evidentiary hearing on defendants' motion and plaintiff's response. *Id.* ¶ 45.

¶ 31    Similarly, in the instant case, after defendants moved to dismiss counts I and II of plaintiff's amended complaint and compel arbitration because she had signed an admission contract containing an arbitration agreement, plaintiff filed a response asserting her incapacity to enter into the contract and attached the affidavit of Dr. Seignious. As discussed earlier in this opinion, Seignious examined plaintiff's medical records showing her history of persistent hypoglycemia, failure to thrive secondary to deconditioning and malnutrition, a urinary tract infection, and recurrent strokes resulting in dysphagia and aphasia, impairing her ability to communicate. Seignious also noted plaintiff's ingestion of psychotropic medication and that, on the date she signed the contract, Oakbrook's social services team had evaluated her with a "severe" level of impairment. Seignious opined that given plaintiff's comorbidities, including her strokes, aphasia, and fluctuations in memory and cognition, she did not have the ability to understand the arbitration agreement contained in the contract, nor did she have the ability to express any concerns she may have had.

¶ 32    Seignious's opinion raises a question of fact regarding plaintiff's ability to understand the nature and effect of the contract and arbitration agreement which she signed, *i.e.*, it raises a question of fact as to whether she rebutted section 2-202(a)'s presumption of her capacity to enter into the agreement. In light of this factual question, the circuit court denied defendants' motion to dismiss counts I and II and compel arbitration thereof. Pursuant to section 2(a) of the Uniform Arbitration Act, though, the proper course is to conduct an evidentiary hearing/summary proceeding on defendants' motion and plaintiff's response. See *Herns*, 2021 IL App (1st) 201064, ¶ 31 (holding that where there are factual questions surrounding the validity of an arbitration agreement, the court must conduct a summary proceeding under section 2(a) of the Uniform Arbitration Act and substantively dispose of the issues presented). Accordingly, we vacate the circuit court's order denying defendants' motion to dismiss and compel arbitration on counts I and II of plaintiff's amended complaint and remand for the court to conduct an evidentiary hearing/summary proceeding thereon.

¶ 33    Seignious's opinion further raises a question of fact regarding whether the admission contract plaintiff signed with Oakbrook, and its accompanying arbitration clause, was procedurally unconscionable. Procedural unconscionability consists of an impropriety during contract formation depriving a party of meaningful choice. *Phoenix Insurance Co.*, 242 Ill. 2d at 60. All the circumstances surrounding the formation of the contract are considered, including whether each party had the opportunity to understand the contract terms and whether important contract terms were hidden in the fine print. *Kinkel*, 223 Ill. 2d at 23.

¶ 34    Defendants argue that Anacay carefully reviewed all the provisions of the contract with plaintiff, including the arbitration provision, which was conspicuous and not hidden away in the fine print, and gave her time to review the contract and ask any questions. However, Seignious's

opinion calls into question plaintiff's ability to understand what Anacay was explaining to her and whether she was capable of fully comprehending the contract terms, including the arbitration provision, and whether she was capable of engaging in a bargained-for exchange of promises necessary to show that she gave consideration for the contract/arbitration agreement. See *Carter v. SSC Odin Operating Co.*, 2012 IL 113204, ¶¶ 19-27 (holding that there must be consideration for an arbitration agreement consisting of a bargained-for exchange of promises or performances). If Anacay compelled plaintiff to sign the contract at a time when she lacked the capacity to understand what she was signing, and the rights she was bargaining away, the contract would be procedurally unconscionable and unenforceable. Given this question of fact as to the validity of the arbitration agreement, the proper course is for the circuit court to conduct an evidentiary hearing/summary proceeding under section 2(a) of the Uniform Arbitration Act and make a substantive determination of the issues so raised. *Herns*, 2021 IL App (1st) 201064, ¶ 31.

¶ 35    Before concluding, we note defendants' argument that Seignious's affidavit should be disregarded because he never met plaintiff and based his opinion solely on her medical records and, thus, his affidavit did not meet the requirements of Rule 191(a) (Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013)) that it be based on his "personal knowledge." We rejected a similar argument in *Rigoli v. Manor Care of Oak Lawn (West) IL, LLC*, 2019 IL App (1st) 191635. In *Rigoli*, the estate of Lucille Rigoli (Lucille) sued the owners and operators of a nursing home for wrongful death and for the pain Lucille suffered before her death under the Survival Act (755 ILCS 5/27-6 (West 2016)). *Rigoli*, 2019 IL App (1st) 191635, ¶¶ 1-3. The circuit court granted defendants' motion to dismiss the Survival Act claims and compel arbitration pursuant to an arbitration agreement with defendants that Lucille had signed. *Id.* ¶ 4. Plaintiff, the executor of Lucille's estate, filed a motion to reconsider the dismissal of the Survival Act claims and also filed an affidavit from Seignious

(the same physician who offered his opinion in the instant case). *Id.* ¶¶ 5, 8. Based on a review of Lucille's medical records, which showed her as having taken multiple medications with side effects including confusion, anxiety, amnesia, dementia, and impaired cognition, Seignious opined that it was unlikely Lucille understood the contents of the arbitration agreement when she was asked to sign it. *Id.* ¶ 8. The circuit court granted the motion to reconsider and denied defendants' motion to dismiss and compel arbitration. *Id.* ¶ 9.

¶ 36     On appeal, defendants argued that the court erred in allowing plaintiff to file Seignious's affidavit as it did not meet the requirements of Rule 191(a). *Id.* ¶ 12. Defendants argued that Seignious had no personal knowledge of Lucille's mental condition as he never met with her and instead relied on her medical history and therefore that the affidavit should have been stricken. *Id.* ¶ 24. We disagreed, holding that "[a]n expert may opine on a person's mental condition even if the expert never interviewed the person." *Id.* ¶ 25. We cited with approval a North Carolina Supreme Court case that examined cases allowing such opinions into evidence. *Id.* (citing *State v. Daniels*, 446 S.E.2d 298, 314-15 (N.C. 1994)). One of the cited cases was *Barefoot v. Estelle*, 463 U.S. 880 (1983), which held the expert's failure to examine a person prior to opining about his mental condition goes to the weight of the expert's testimony, not to its admissibility. We held that

"Seignious based his opinion on medical records and his knowledge of the side effects of the many medications Lucille ingested within a relatively short time before she signed the arbitration agreement. The circuit court did not abuse its discretion by denying the motion to strike the affidavit." *Rigoli*, 2019 IL App (1st) 191635, ¶ 26.

¶ 37     Similarly, in the present case, Seignious based his opinion on a review of plaintiff's medical records showing her debilitated physical and mental condition at the time she signed the arbitration agreement. Seignious's affidavit was admissible under Rule 191(a) and was properly

considered by the circuit court when denying defendants' motion to dismiss and compel arbitration.

¶ 38    For all the foregoing reasons, we vacate the judgment of the circuit court denying defendants' motion to dismiss counts I and II of plaintiff's amended complaint. We remand for the court to hold an evidentiary hearing/summary proceeding on defendants' motion and plaintiff's response pursuant to section 2-202(a) of the Uniform Arbitration Act.

¶ 39    Lancaster requested that in the event we reversed the denial of defendants' motion to dismiss counts I and II of plaintiff's amended complaint and ordered arbitration thereof, that we stay count III pending resolution of the arbitration. We decline to address this issue as it is not ripe for adjudication. On remand, if the circuit court grants the motion to dismiss and compel arbitration on counts I and II following the summary proceeding, Lancaster may request a stay of count III.

¶ 40    Vacated and remanded.

---

*Sanders v. Oakbrook Healthcare Centre, Ltd.*, 2022 IL App (1st) 221347

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-13794; the Hon. Moira S. Johnson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Carter A. Korey and Chaniece M. Hill, of Korey Richardson LLP, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael W. Rathsack, of Law Offices of Michael W. Rathsack, of Park Ridge, and Gabriel J. Aprati, of Levin & Perconti, of Chicago, for appellee. |