2025 IL App (1st) 250553-U

No. 1-25-0553

Order filed December 17, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DORUK ILGAZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 L 10032 |
| | ) | |
| BENEDICT GAMBINO, UBER TECHNOLOGIES INC., | ) | |
| and LIBERTY MUTUAL SURPLUS INSURANCE | ) | |
| CORP., | ) | Honorable |
| | ) | Frank J. Andreou, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Martin and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly dismissed plaintiff's negligence claim with prejudice because no issue of material fact existed that would invalidate his prior release of this claim.

¶ 2    Plaintiff Doruk Ilgaz appeals the circuit court's judgment that dismissed with prejudice his negligence action against defendants Benedict Gambino, Uber Technologies Inc. (Uber), and Liberty Mutual Surplus Insurance Corp. (Liberty Mutual). The court concluded that a written

release barred plaintiff from seeking relief for injuries he suffered when a vehicle driven by Gambino struck plaintiff while he was riding his bicycle.

¶ 3     On appeal, plaintiff argues that the circuit court erred because the release is invalid based on his mental incapacity and the fact that English is not his first language.

¶ 4     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                I. BACKGROUND

¶ 6     Plaintiff alleges that on December 14, 2023, he was riding his bicycle when he was struck in an intersection by a vehicle driven by Gambino, who was working as a driver for Uber. Plaintiff alleged that Liberty Mutual acted as Gambino's and Uber's insurer. Plaintiff was taken by ambulance to the hospital for care for injuries to his head and legs.

¶ 7     Several weeks later, plaintiff exchanged e-mails with a representative of Liberty Mutual wherein plaintiff ultimately agreed to settle all his claims against Gambino and Uber arising from the December 14, 2023, collision for $17,500. Plaintiff signed the confidential release on February 13, 2024.

¶ 8     In September 2024, plaintiff filed a *pro se* complaint against Gambino, Uber, and Liberty Mutual. In December 2024, the circuit court ordered the complaint stricken for failure to set forth any facts that would state a cause of action and gave plaintiff leave to file an amended complaint.

¶ 9     Thereafter, plaintiff filed his *pro se* verified amended complaint seeking damages for the personal injuries he alleged he suffered as a result of Gambino's negligent driving on December 14, 2023. Plaintiff acknowledged that he had agreed to settle this claim and signed the release;

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

however, he alleged that after the 2023 collision he suffered from physical injuries and mental incapacity, which included migraines, loss of balance, loss of hearing, loss of memory, loss of taste, blackouts, and loss of cognitive abilities. He also alleges that, as a result of his injuries and incapacity, he was not able to perform his duties as an adjunct college professor and took a leave of absence at the start of the spring 2024 semester. In March 2024, he was taken to the hospital after experiencing a blackout and collapsing. He alleged that, during this hospitalization, he was finally diagnosed with a previously undetected brain hemorrhage that had affected a large part of the right side of his brain and prevented him from living a normal life and working. He claimed that he had incurred additional medical damages and lost wages after signing the release and sought additional compensation for his injuries, including treble damages for medical expenses, lost wages, costs, and attorney fees. Exhibits attached to the complaint included photographs of Gambino's vehicle and plaintiff's injuries after the collision; e-mails between plaintiff and Liberty Mutual's representative; two pages of the text of a release; a March 16, 2024, radiologist's report concerning plaintiff's CT scan of the face without contrast, which includes impressions concerning a hemorrhage of the right temporal and left front lobes and a large right parietal scalp hematoma; hospital medical bills; and plaintiff's 2023 W-2 wage and tax statement.

¶ 10    Thereafter, plaintiff filed, *pro se*, an amendment to his amended complaint, seeking more lost wages he anticipated would result from the policies likely to be enacted by the newly inaugurated Trump administration. Plaintiff also alleged that the internal bleeding in his brain, which initially went undetected, slowly accumulated and flooded the right part of his brain, incapacitating him from teaching classes. He alleged that his health condition has significantly worsened and "[t]hese were unknown to both sides when signing the settlement." He also alleged

that he is being treated for depression and has suffered emotional trauma from his doctors' conclusion that the only remedy for plaintiff's brain hemorrhage is to wait and see if the blood will ever clear from his brain.

¶ 11    Defendants moved to dismiss plaintiff's claim pursuant to section 2-619(a)(6) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(6) (West 2022)). Defendants argued that plaintiff's claim was barred because he had settled it pre-suit and the release was an enforceable contract. Furthermore, plaintiff's allegations that he had incurred additional medical expenses and lost wages after he signed the release amounted to merely a unilateral mistake, which was not sufficient to void the release. Defendants also moved the court to strike plaintiff's complaint and amendments thereto because they violated the confidential settlement release.

¶ 12    In February 2025, the court ruled that plaintiff's amendment would be considered both as part of the operative complaint and a response in opposition to the motions to dismiss.

¶ 13    Plaintiff filed, *pro se*, "Amended Complaint – Draft Three," wherein he added the allegation that his injuries included a loss of comprehension of the English language, which is his second language. He also alleged that when he was hospitalized in March 2024, the doctors "noticed Plaintiff's internal bleeding in his brain has flooded certain regions of his brain that was undetected before." He alleged that his loss of comprehension of English and his other injuries "has continued to this day" and his doctors decided in February 2025 to refer him to a concussion specialist to analyze the effects of his concussion and begin rehabilitation. Plaintiff cited case authority for the proposition that settlement agreements could be voided on the basis of a party's diminished mental capacity at the time of contract formation. He argued, *inter alia*, that his CT scans, which show that the hematoma and hemorrhage are more serious one year after the

December 2023 collision, were *prima facie* evidence of his mental incapacitation and that he was not competent to sign the release in February 2024. He asked the court to void the release based on his mental incapacitation and the low amount of the settlement. He attached more medical records as exhibits to his third amended complaint.

¶ 14　In March 2024, plaintiff filed, *pro se*, "Amended Complaint – Draft Four." This draft added allegations that plaintiff's March 2024 CT scans showed that the cracks that had formed during the concussion did not heal and blood leaks had flooded certain parts of his brain and "that was undetected before"; he is suffering post-concussion syndrome, "which implies he is incompetent to sign agreements"; and his February 2025 referral to rehabilitation was "mainly due to issues with his language comprehension which directly affects his competency for teaching let alone reading comprehension skills required for validity of an agreement." Plaintiff also filed, *pro se*, "Amended Complaint – Draft Five," which added the allegation that his March 2024 CT scans, which detected bleeding spread over multiple parts of his brain and showed that bleeding continued five months after the collision, "implies multiple tasks of the brain are affected by this" traumatic brain injury. Plaintiff also alleged that because English is his second language, "[t]his implies his brain requires more parts of the brain to communicate in a language different from his mother tongue."

¶ 15　Plaintiff also filed a response in opposition to the motions to dismiss, arguing that the 2023 collision had affected his ability to communicate in English and comprehend it, and the court should void the February 2024 release based on his diminished mental capacity. He alleged that the collision damaged the left posterior temporal lobe of his brain, or Wernicke's area, which is essential for understanding spoken and written words. He also alleged that this injury could have

affected him more seriously than a native English speaker because English is his second language. Furthermore, his traumatic brain injury was not merely a concussion but, rather, was a hemorrhage or hematoma, which is a more serious medical condition. According to plaintiff, when he was discharged from the hospital after the collision, the hospital neurosurgeons decided that he was incompetent to work as a teacher and recommended that he "plan for a couple of months off work." Afterwards, he experienced longer blackouts, more severe migraines, more frequent memory problems, and difficulty communicating so that he had to ask people to repeat or speak slowly when conversing in English. He also avoided reading to prevent triggering migraines. He alleged that his CT scans after March 16, 2024, led neurologists to conclude that his light hemorrhage from the 2023 collision had since flooded parts of his brain and caused his concussion symptoms and post-concussion syndrome to become more severe. He argues that if he was not competent to teach after the 2023 collision, then he must have been incompetent to understand the release he signed in February 2024.

¶ 16    Liberty Mutual replied, arguing that plaintiff's case should be dismissed because he had willingly signed the release in exchange for compensation and that release clearly barred all future claims against defendants. Furthermore, defendants moved the court to rule on their motions to dismiss and to grant plaintiff leave, *nunc pro tunc*, to file his third, fourth, and fifth amended complaints and incorporate them as part of his response to the motions to dismiss. Defendants also moved the court to strike plaintiff's complaints from the public record because they violated the terms of the confidential settlement release.

¶ 17     On March 24, 2025, the court granted defendants' motions to dismiss with prejudice under section 2-619(a)(6) of the Code. The court also ordered stricken plaintiff's fourth and fifth proposed amended complaints.

¶ 18     Plaintiff timely appealed.

¶ 19                                    II. ANALYSIS

¶ 20     Defendants argue that plaintiff has forfeited his arguments on appeal because he fails to clearly articulate how or why the circuit court's order dismissing his claim should be reversed. Defendants also argue that plaintiff's statement of facts includes no citations to the record on appeal, includes improper argument, and fails to explain the facts and circumstances of this case. Furthermore, defendants argue that plaintiff's argument does not give this court any substantive analysis of the issues.

¶ 21     We agree that plaintiff's brief is in severe violation of Illinois Supreme Court Rule 341(h) (eff. July 1, 2008). Our "rules of procedure are rules and not merely suggestions." *Ryan v. Katz*, 234 Ill. App. 3d 536, 537 (1992). Consequently, Rule 341's mandates detailing the format and content of appellate briefs are compulsory. See *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. It is of no matter that a party appears *pro se*; regardless of his status, no party is relieved of the duty to comply, as closely as possible, with the rules of our courts. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38. Where an appellant's brief contains numerous Rule 341 violations and, in particular, impedes our review of the case at hand because of them, it is our right to strike that brief and dismiss the appeal. See *id*. Ultimately, we are "not a depository in which the appellant may dump the burden of argument and research" for his cause on appeal. (Internal quotation marks omitted.) *Id*.

¶ 22 Accordingly, due to plaintiff's multiple failures regarding Rule 341 and the lack of form and content of his appellate brief, we would be entitled to dismiss his appeal without further review. However, given the *de novo* standard of review at issue here, and the fact that this issue involves a determination on whether plaintiff has sufficiently pled and proven the existence of a genuine issue of material fact as to his mental competency to settle his negligence claim against defendants, we choose, in our discretion, to review this appeal. See *In re Estate of Jackson*, 354 Ill. App. 3d 616, 620 (2004) (reviewing court has choice to review merits, even in light of multiple Rule 341 mistakes).

¶ 23 Plaintiff argues that the trial court erred when it dismissed his claim with prejudice because he presented evidence establishing that neurosurgeons had diagnosed him with traumatic brain injury and post-concussion syndrome, and that English was his second language. Plaintiff also argues that his diagnoses in conjunction with his status as an English-as-a-second-language speaker rendered him mentally incompetent to enter into a valid contract. Plaintiff contends that this evidence is sufficient to withstand defendants' 2-619 motion to dismiss because an issue of material fact exists concerning whether he was mentally competent to sign the release of his negligence claim against defendants.

¶ 24 "A release is the abandonment of a claim to the person against whom the claim exists." (Internal quotation marks omitted.) *Borsellino v. Putnam*, 2011 IL App (1st) 102242, ¶ 103. "Once the defendant establishes the existence of a release, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence." *Simmons v. Blauw*, 263 Ill. App. 3d 829, 832 (1994). A release may be voided where its execution was obtained through, among other things, mutual mistake (*Al-Any v. Harshaw*, 2025 IL App (2d) 230392, ¶ 30), or

where a party lacked the mental capacity to enter the release (*Curry v. Curry*, 31 Ill. App. 3d 972, 975 (1975)). "[T]he presumption that a person had the capacity to enter into a contract is rebuttable by showing that they lacked the ability to comprehend the nature and effect of what they are doing." *Sanders v. Oakland Healthcare Centre, Ltd.*, 2022 IL App (1st) 221347, ¶ 23.

¶ 25    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that appear on the face of the complaint or are established by external submissions that act to defeat the claim. *Krilich v. American National Bank & Trust Co.*, 334 Ill. App. 3d 563, 569-70 (2002). On appeal from a section 2-619 dismissal, the reviewing court must consider *de novo* whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether the dismissal was proper as a matter of law. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008).

¶ 26    Section 2-619(a)(6) of the Code provides for the involuntary dismissal of a complaint where, among other reasons, the claim in the complaint has been released. 735 ILCS 5/2-619(a)(6) (West 2022). The validity of releases has been decided at various stages and through different judicial procedures. *Meyer v. Murray*, 70 Ill. App. 3d 106, 113-14 (1979) (citing cases where a release's validity was decided by a jury, judgment on the pleadings, summary judgment, or motion to dismiss). Section 2-619 of the Code affords a means of obtaining at the outset of a case a summary disposition of issues of law or easily proved issues of fact. See *id*. at 114 (citing former version of this statue, Ill. Rev. Stat., 1977, ch. 110 par. 48). Section 2-619

"motions admit facts well-pleaded, but do not admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. [Citation.] If the record establishes that a genuine and material question of fact does not

exist, the motion to dismiss should be allowed; but if there is a genuine and material question of fact and a jury demand, the motion should be denied. [Citation.] In making his ruling, the trial court judge may not weigh the evidence. [Citation.]

The defendant, of course, has the burden of proving the affirmative defense relied upon in a motion to dismiss. [Citation.] If, however, the defendant's motion is based upon a release or covenant, valid on its face, then the burden shifts to the plaintiff to sufficiently allege and prove that a material issue of fact exists which would invalidate the agreement. [Citations.] The parties may file affidavits, counter affidavits, interrogatories, documents, and deposition transcripts; in addition, they may call witnesses to testify during the hearing before the trial court judge. [Citations.]" *Id*. at 114-15.

¶ 27 Plaintiff acknowledged in his third amended complaint that he had been diagnosed with a concussion after the 2023 collision and was aware of his concussion-related symptoms before he settled. Furthermore, plaintiff has failed to make nonconclusory allegations of fact sufficient to show that he is mentally incapacitated or that a mental incapacity precluded his ability to contract. See *Boswell Memorial Hospital v. Bongiorno*, 314 Ill. App. 3d 620, 622 (2000) (the defendant's bald assertions did not create a question of material fact regarding whether her husband's medical condition affected his ability to contract with the plaintiff); *cf. Sanders*, 2022 IL App (1st) 221347, ¶¶ 31-32 (affidavit of physician who reviewed plaintiff's medical records and opined that her underlying medical and psychiatric condition prevented her from understanding the contract at issue was sufficient to raise a question of fact as to her capacity to enter into the contract). The record here does not raise a material question of fact about whether plaintiff had a condition that prevented him from understanding the settlement and release. Contrary to his arguments on appeal,

his medical records do not speak to this issue, and his communications with Liberty Mutual's representative do not suggest any such issue. Similarly, his ability to prosecute this case *pro se*, both before this court and the circuit court, suggests no competency issues. Furthermore, plaintiff does not specifically claim that he was unable to read or understand English. Even if the signatory to a contract is a non-English speaker or illiterate, the decision to sign a contract or legal document signifies that the signatory "had an opportunity to become familiar with and comprehend" the terms of the document. (Internal quotation marks omitted.) *Mizyed v. Palos Community Hospital*, 2016 IL App (1st) 142790, ¶ 55. Consequently, plaintiff has not sufficiently alleged and proven the existence of a material question of fact that would invalidate the release.

¶ 28    Viewing the record under the law relevant to the determination of the validity of settlement agreements in personal injury actions, and in accordance with the law applicable to motions to dismiss under section 2-619 of the Code, we conclude that the circuit court properly granted defendants' motions to dismiss with prejudice.

¶ 29                                III. CONCLUSION

¶ 30    The circuit court's order granting defendants' motions to dismiss with prejudice is, therefore, affirmed.

¶ 31    Affirmed.